920 A.2d 606

Dennis G. KLEBAN et al.

v.

Jacqueline S. EGHRARI–SABET et al.

No. 1018, Sept. Term, 2006.

Court of Special Appeals of Maryland.

April 6, 2007.

62

Allyson B. Baker (Michael D. Hausfeld, Richard A. Koffman on the brief), Washington, DC, for appellant.

Deanna L. Peters and Jeffrey M. Schwaber of Rockville, for appellee.

Argued before DAVIS, BARBERA and MEREDITH, JJ.

DAVIS, J.

On February 17, 2006, at the conclusion of a five-day jury trial in the Circuit Court for Montgomery County, Maryland, the jury returned a verdict for appellants Dennis G. Kleban, M.D. and Dennis G. Kleban, M.D., P.A. (Dr. Kleban) on their breach of contract claim, awarding him $75,000 and found against appellees Jacqueline S. Eghrari–Sabet, M.D. and Jacqueline S. Eghrari–Sabet, M.D., P.C. (Dr. Eghrari)[1] on the

1. Unless otherwise indicated, Dr. Dennis G. Kleban and Jacqueline S. Eghrari–Sabet, M.D. will be referred to hereinafter, in the singular, as "Dr. Kleban" or "appellant" and "Dr. Eghrari–Sabet" or "appellee," respectively, and the collective designation of the parties and their business entities, Dennis G. Kleban, M.D., P.A. and Jacqueline S.

counterclaim. The circuit court excluded the testimony of appellants' damages expert.

On March 2, 2006, appellees moved for a judgment notwithstanding the verdict, or in the alternative, a revision of the judgment. On March 9, 2006, appellants moved for a partial new trial as to damages, which the circuit court denied in its order dated August 10, 2006. The circuit court denied appellees' motion for judgment notwithstanding the verdict, but granted appellees' motion to revise the jury verdict in an order dated June 1, 2006. The circuit court reduced the jury's damages award from $75,000 to $1.

The circuit court had entered a judgment in appellants' favor for $75,000 on February 27, 2006 and subsequently entered a revised judgment, reducing appellants' damages award to $1 on June 8, 2006. Appellants sought a motion for a partial new trial as to damages because the circuit court granted appellees' motion to strike the opinion of appellants' damages expert regarding future lost income and because the circuit court also granted appellees' motion to strike the remaining portion of the testimony of appellants' damages expert on grounds that it was not based on a sufficient factual predicate. Appellants appeal from both circuit court orders— the portion of the June 1 Order reducing appellants' damages award from $75,000 to $1 and the August 10 Order denying appellants a partial new trial as to damages, raising the following questions for our review:

1. Did the [c]ircuit [c]ourt rule incorrectly and improperly invade the province of the jury by revising the jury's award of $75,000 on [appellants'] breach of contract claim to $1?

2. Did the [c]ircuit [c]ourt abuse its discretion by denying [appellants'] Motion for a Partial New Trial as to Damages, which was necessitated by the [c]ircuit [c]ourt's erroneous decision to preclude [appellants'] damages expert from testifying?

---

Eghrari–Sabet, M.D., P.C., will be referred to hereinafter, respectively, in the plural, "appellants" and "appellees."

## FACTS AND LEGAL PROCEEDINGS

In 1975, Dr. Kleban, through his corporation, Dennis Kleban, M.D., P.A., founded a medical practice specializing in treating patients with allergies. For almost twenty years, Dr. Kleban maintained a sole practice managing all aspects of his business until March 2005 in Montgomery Village, Maryland. In 1995, Dr. Kleban hired Dr. Eghrari.

In January 2001, Dr. Kleban and Dr. Eghrari entered into an agreement (the "Agreement") which established a joint practice (the Practice) and in which it was agreed, among other things, that Dr. Eghrari would assume management oversight of the practice on behalf of both of them and that Dr. Kleban would continue to treat patients until he chose to retire or died or was declared mentally incompetent.

The Agreement further provided that Dr. Eghrari would (a) acquire the lease to Dr. Kleban's primary office in Montgomery Village, (b) oversee the daily management and operations of the joint practice for both of them, (c) hire office staff for both of them and (d) oversee payment of all overhead costs, including staff salaries and insurance costs attributable to both of them. The Agreement also provided that, going forward, Dr. Eghrari and Dr. Kleban would receive income in proportion to their respective productivity. The parties would also pay overhead expenses in proportion to their respective incomes. The Agreement also provided for a scenario in the event that either party elected to leave the shared practice. On April 19, 2004, Dr. Eghrari "terminat[ed][the] practice relationship" effective October 31, 2004 and subsequently Dr. Kleban discontinued his practice as of March 17, 2005 and began to practice again in August 2005.

The parties' relationship deteriorated and, as a result, Dr. Kleban filed a complaint in the Circuit Court for Montgomery County on November 9, 2004 for, among other things, breach of the 2001 Agreement. The circuit court issued a scheduling order dated the same day, indicating that appellants' experts should be identified and notification filed by April 8, 2005; the

court amended that date to June 1, 2005 by order on March 24, 2005.[2]

On June 1, 2005, in accordance with the amended scheduling order, appellants designated Charlotte L. Kohler (Kohler) as a testifying expert and stated that she would render the following opinion regarding the damages appellants incurred from appellees' breach of the 2001 Agreement:

> Ms. Kohler will opine in this case as to the following: (i) the value of services that [appellees] Jacqueline S. Eghrari–Sabet, M.D. and her professional corporation, Jacqueline S. Eghrari–Sabet, M.D., P.C. (collectively, "Dr. Eghrari") were to provide to Dr. Kleban pursuant to the January 1, 2001 agreement between the parties; (ii) the income and proper expenses of the practice, and, thus, the amount of compensation that was properly due to Dr. Kleban pursuant to the Agreement during the years 2001 through 2004; and (iii) the value of the income that [appellees] diverted from [appellants] to a junior doctor and ancillary medical personnel. Ms. Kohler expects to present a reconciliation of the practice's books as compared to the compensation that was actually paid to [appellants] and that which was actually due to [appellants] under the Agreement.

On September 2, 2005, appellees served interrogatories on appellants who answered on October 6, 2005 in the following manner as to interrogatory number twenty-four:

### INTERROGATORY NO. 24:

> Identify all experts whom you expect to call as expert witnesses at trial, and state the subject matter(s) on which such experts are expected to testify, the substance of the findings and opinions to which the experts are expected to testify, and the summary of the grounds for each opinion.

---

2. Appellees claim that the date was further extended to September 30, 2005 to allow former defendants, Jim Emmick and Exectech, to identify experts but no citation to the record confirms this.

Attach to your Answers copies of all written reports made by such experts.

### RESPONSE TO INTERROGATORY NO. 24:

In addition to the foregoing objections, Dr. Kleban objects to Interrogatory No. 24 as unduly burdensome and duplicative to the extent it seeks information already provided to Dr. Eghrari. Subject to and without waiving the foregoing objections, Dr. Kleban refers to [appellants'] Expert Disclosure previously filed and served.

On December 7, 2005, Kohler produced an eighty—page expert report and exhibits, detailing the entire scope of appellants' damages to which Kohler intended to testify at trial. On December 14, 2005, appellees' counsel deposed Kohler. Following the deposition, on December 23, 2005, appellees filed a Motion to Strike appellants' expert alleging that appellants failed to timely designate any expert on the matter of future lost wages. On February 10, 2006, appellees moved to strike the portion of Kohler's intended expert testimony relating to future lost income analysis.

On February 13, 2006, the jury trial, which lasted five days, commenced. After jury selection, the trial court heard arguments on the parties' motions *in limine.* The trial court granted part of appellees' motions to strike Kohler's testimony, finding that the court would not "exclude [Kohler] in her entirety, but she may not testify to those matters that were essentially in the supplement, which the [c]ourt finds to be above and beyond what the put [sic] the defendant, or [appellants] put the [appellees] on notice that they would testify to." In ruling on the motion to strike, the court reasoned:

The issue here is a simple one. It is not an evidentiary question; it's a procedural question whether in fact you designate an expert and notify the other side what that expert witness is going to testify to, the other side has a right to rely upon that.

\* \* \*

What the [appellees] are saying, but we didn't know that she was going to testify about future damages, lost wages out into the future. Had we known that, we would have done some other things with our expert. The answer is not whether or not there was evidence by the answers to interrogatories or in deposition that this was an issue that was out there.

* * *

Clearly the doctor himself will testify in this case, I'm virtually assured of that, and he can certainly testify to what his losses are, what his losses will be. That could have been an alternative in this case, and there may not have been a necessity for an expert.

And so whether [appellees] made that as a trial strategy or not is really not before this Court. They were not required to be prepared for any and everything that an expert might possibly say after it had been made very clear to what the expert would say.

Now, they're not asking that the expert be excluded in her entirety, and she will not be, but just that she will not be permitted to testify regarding that portion of her opinion that involves future wages.

Counsel says they subpoenaed documents that she had, and that once a subpoena was issued that it was improper to destroy those documents. Well, we don't really have to reach that issue, since the Court will not permit the testimony that goes beyond what she was originally designated to testify to.

Thus, as a result of the court's ruling, Kohler would not be permitted to testify about appellants' future lost wages, but she would be permitted to testify as to her opinions regarding the other types of damages that appellees suffered. Appellants objected to the circuit court's ruling and thereafter presented opening statements and, from that point forward, Kohler was in the courtroom for all of appellants' case-in-chief.

During the second day of the trial, on February 14, 2006, Dr. Kleban testified about the nature of damages that he had

suffered. He described the significant decline in his income, the sharp decrease in the number of new patients he was scheduled to treat starting in January 2003 and his inability to recoup his lost income after being forced from the Practice in March 2005. In addition, during his direct testimony, Dr. Kleban introduced into evidence documents cataloging his concerns about the Practice's escalating overhead costs and about his decreased income. Evidence relating to the nature and extent of appellants' damages also was introduced during the direct examinations of other witnesses, including Emmick, who testified that he helped appellees force appellants from the Practice and that he understood that removing Dr. Kleban from the Practice would cause Dr. Kleban to lose significant income.

At the end of the day on February 14, the parties stipulated to admission of Kohler's curriculum vitae. The next day, February 15, Dr. Heidi Isenberg–Feig, appellees' former employee and appellants' current employer, offered direct testimony that, beginning in 2003, all or almost all of the Practice's new patients were diverted to her and away from appellants and Kohler testified for approximately thirty minutes about her professional endeavors and qualifications.

The next morning, on February 16, appellees moved to strike Kohler's testimony, contending that Kohler's proffered opinion, the scope of which was presented in her expert report and during her deposition, was speculative and not based on the facts at issue in the case. After testimony of Kohler outside of the jury, the trial court refused to permit her to testify, finding that there "was not a sufficient factual basis" for her opinion. In excluding the witness's testimony, the court ruled:

> Well, in *Wallach v. Board of Education*, which is at 99 Md.App. 386, 637 A.2d 859, the Court had a similar dilemma before it with respect to an expert witness.... But the Court said that in that situation, it "lacked a factual foundation required for an opinion to be admissible." The opinion was based on mere conjecture or speculation.

And in this case we don't have any hypothetical questions. We have no sufficient factual foundation regarding the basis upon which this expert made her determinations.

* * *

Now, we haven't heard from the [appellee], but we've heard extensive testimony from Dr. Kleban. It isn't anything complicated. I mean he's testified that he brought in a young doctor, that he wound down his practice, that in fact they agreed to sell the practice, that he was going to stay on and that he was going to, as I said, cut back on his practice but he was still going to have the benefit of the office, the staff, personnel, and practice there. And for business reasons essentially became, even though these were not his words, the Court reasonably infers, an employee of the practice, not an employee of Dr. Eghrari but an employee of the practice.

And slowly but surely, the Court infers that he has testified that he was gradually pushed out. He began to notice that the expenses were increasing and his income was going down as the expenses increased. Eventually the case ended up in a lawsuit, or in several lawsuits. There isn't anything complicated about that. There's nothing that needs an expert witness.

* * *

[APPELLANT'S COUNSEL]: Ms. Kohler had other opinions as well. Are you excluding Ms. Kohler in all respects?

THE COURT: I don't find that there is a sufficient factual basis for expert testimony in this case.

* * *

Aside from that, the purpose of an expert witness is to help a jury understand certain things. There's nothing complicated in this case in terms of what occurred between the [appellants] and the [appellees].

On February 17, at the close of appellants' case, appellees moved for judgment on appellants' contract claim, arguing that appellants failed to present legally sufficient evidence of

Dr. Kleban's damages. The court denied that motion and explained that there was sufficient evidence to take the case to the jury. The trial court found:

> Having considered and reviewed [the court's] notes and the evidence in this case, the [c]ourt will deny the motion and the case will go to the jury. The [appellant] may not have met his requirements of proving his damages to the extent that the [appellant] is asking for them but the jury could very well given the facts in this case, this [c]ourt finds a jury could find in favor of the [appellant] and award the [appellant] nominal damages. It's not, the evidence doesn't have to be that the [appellant] has proven up the damages for which they are praying. And there is, in fact, a jury instruction on nominal damages and so the motion is denied.

The jury returned a verdict for appellants and judgment was entered on March 1, 2006.

On March 2, 2006, appellees filed a motion for judgment notwithstanding the verdict, or in the alternative, to revise the judgment and, on March 9, 2006, appellants filed a motion for a new trial. The circuit court heard arguments on appellees' motion on May 31, 2006 and, in an Order dated June 1, 2006, denied the motion for judgment notwithstanding the verdict, but granted the motion to revise the judgment, reducing appellants' damages award from $75,000 to $1 pursuant to Maryland Rule 2–535. The court ruled:

> In all, [appellees] claims that [appellants] failed to show that any of the numbers presented to the jury had *any* relation to the purported loss that he suffered as a result of any breach by [appellees].
>
> * * *
>
> Further, and very instructive for the Court, the [appellees] conceded during the motion hearing that it is accepted for purposes of this motion that (1) there was a contract between [appellants] and [appellees]; (2) that the jury found that [appellees] breached the contract; (3) that there was some evidence before the jury that [appellants] made a certain amount of income prior to his departure from the

practice with the [appellees] and (4) that [appellants'] income has dropped, *perhaps* precipitously so, since his departure from Eghrari P.C. What the [appellees] does not concede, and what [appellees] urges this Court to recognize as [appellants'] failure to present during trial, is any notion that the jury was provided with any evidence of *why* [appellants'] income dropped following [appellees'] breach of the contract or, stated another way, that the losses allegedly suffered by [appellants] were attributable to [appellees'] breach of the contract. *See Kirby v. Chrysler Corp.*, 554 F.Supp. 743, 753 (D.Md.1982).

\* \* \*

With respect to the revision of the verdict, [appellants] correctly sets forth the standard for such motions and states that it in order to revise a jury's verdict, the Court must first determine whether the verdict was defective and then must ascertain what the jury manifestly and beyond a doubt intended and consider whether the verdict accords with this manifest intent. *See Polkes & Goldberg Ins., Inc. v. General Ins. Co. of America,* 60 Md.App. 162, 167, 481 A.2d 808 (1984), *cert. denied,* 302 Md. 288, 487 A.2d 292 (1985). [Appellants] argues that [appellees] have failed to meet this burden because it is not alleged in the [appellees'] motion that the jury's verdict does not accord with its apparent intent.

\* \* \*

"A motion for judgment notwithstanding the verdict need not be filed *if* the court reserved ruling on a motion for judgment under Rule 2–519 made at the conclusion of all the evidence. The reservation automatically converts the losing party's motion for judgment into a motion for judgment notwithstanding the verdict." *See* Paul V. Niemeyer & Linda M. Schuett, Maryland Rules Commentary 448 (3rd Ed.2003). Coupled with the fact that a motion for judgment notwithstanding the verdict may be filed only if the moving party also made a motion for judgment under Rule 2–519, Rule 2–532 clearly contemplates and logically must be in place for those parties whose motions for directed verdict

were in **fact *denied*** by the trial court. Otherwise, if the moving party prevailed or the Rule 2–519 motion or the ruling on the Rule 2–532 motion was reserved by the court, there would be no need to have a separate provision coveting motions for judgment notwithstanding the verdict.

The trial judge further opined that, when he denied appellees' Motion for Directed Verdict, damages had not been proven by appellants, although he believed that appellees had breached the contract. The Court had intended that the breach of contract claim go to the jury for "what could possibly be nominal damages." The court based its decision to revise the verdict on its finding of liability and the appellees' concessions that there have been a breach of contract and a precipitous drop in income subsequent to appellees' departure from the business.

In conclusion, as noted, the court announced, "[appellees'] Motion for Judgment Notwithstanding the Verdict is DE-NIED and [appellees'] Motion to Revise the Judgment is GRANTED and the Judgment is hereby REDUCED to $1.00 compensatory damages in [appellants'] favor, reflecting nominal damages awarded in the event compensatory damages are not adequately proven despite a finding of liability. *See Asibem Associates, Limited v. Rill,* 264 Md. 272, 276, 286 A.2d 160 (1972). An order shall issue." The memorandum opinion ended by stating that the following order would issue:

## *ORDER*

UPON CONSIDERATION of [appellees'] Motion for Judgment Notwithstanding the Verdict or, in the alternative, Motion to Revise the Judgment, filed herein at DE# 301, [appellants'] response thereto, filed herein at DE# 313, and [appellees'] Response thereto, filed herein at DE# 315, and upon consideration of the May 31, 2006 hearing on [appellees'] motion, it is this 1st day June, 2006, by the Circuit Court for Montgomery County, Maryland,

ORDERED that [appellees'] Motion for Judgment Notwithstanding the Verdict is hereby DENIED and [appellees'] Motion to Revise the Judgment is hereby GRANTED; and it is further

ORDERED that the judgment in this case is hereby MODIFIED to reflect an award in [appellants'] favor of $1.00 in nominal damages.

On July 12, 2006, the circuit court heard arguments on appellants' motion for a new trial and ruled as follows:

THE COURT: An examination of Ms. Kohler's opinions leads to the inescapable conclusion that her testimony lacked the necessary factual predicate to raise it above the level of mere speculation and conjecture:

Q. Okay. And you came up with your own formulation for how the percentages should have worked between these doctors, right?

A: Yes, I did.

Q. Okay. And in fact you applied two different percentages, right? One for overhead and a different formula for their percentage generally.

A. Yes, I did.

\* \* \*

Q: The contract, you know that's in evidence, right?

A: I sure do.

Q: That talks about a formula that's based on billing, right?

A: Yes.

Q: Okay. And you didn't do that in your formula.

A: I did in part.

Q: In part, but in part you didn't, right?

A: In part, because—

Q: I don't need the explanation, I just, in part you did not follow the formula set forth in the contract, right?

A: In part.

\* \* \*

Q. Okay. So just to be clear, and then I think I may be done, the work you did was apply your practice experience in this field, and your accounting background, and essentially try to look yourself at the year 2001, 2004, and determine what, how overhead should have been allocated, and look at the checks that came in, the Virginia Commerce Bank, and figure out from that, based on your assessment of how it should have been done, how much Dr. Kleban owed. And then you compared that to what you saw on his tax return he was paid, and that's how you came up with the difference.

A: That's correct.

Q: And you didn't look at how it in fact was allocated at all.

A: I couldn't.

Q: Okay. But you didn't.

A: I couldn't. I didn't say I didn't. I said I couldn't.

Q: And because you couldn't, you did not.

A: That is correct.

Q: Your report is not based on anything actual about the allocation, is that a fair statement.

A: It's a fair statement.

Q: And what you looked at as the basis, as your starting point to figure out the income, was all the money that went into Dr. Eghrari's P.C. bank account at Virginia Commerce Bank, right.

A: That was one of my starting point [sic], sure.

Q: Okay. So you included anything that was in that bank account.

A: No. We were able to segregate some things out that appeared, because of the information provided, not to be patient receipts.

Q: Okay. Are you confident that the only thing you included was patient receipts?

A: I can't swear—

Q: Or do you not know?

A: —it's 100 percent. It's very close.

Q: Okay. Do you know that Dr. Eghrari, for example, gets paid by drug companies to conduct studies?

A: No.

Q: Okay. Do you know that Dr. Eghrari speaks and receives honoraria for speaking at a CNE program?

A: No.

Q: Okay. So you didn't break out any of that in Virginia Commerce Bank money, did you?

A: Didn't have the information.

The Court puts forth this unusually lengthy portion of the trial transcript because this section fully demonstrates how tenuous a connection Ms. Kohler's testimony had to the facts of this case.

In a breach of contract action, Ms. Kohler ignored the contract while determining how costs and profits should have been allocated, matters covered by the contract. When calculating damages, based on a formula of her own creation—which had no relevance to this matter—Ms. Kohler opined based on an incomplete, and ultimately incorrect, factual predicate.

\* \* \*

[Appellant] also complains about this Court's ruling which struck Ms. Kohler [sic] specific testimony regarding lost future income. As discussed, *supra,* Ms. Kohler's testimony, in its entirety, was rightfully excluded at trial for lack of an adequate factual basis, rendering this question moot. Even if Ms. Kohler had an adequate factual basis for her opinions regarding lost future income, a possibility which this Court finds wholly unlikely, [appellant's] failure to timely disclose this opinion on his expert designation of Ms. Kohler was a substantive violation of the Maryland Rules and this Court's Scheduling Order for this matter which prejudiced the appellees.

In an order dated August 10, 2006, the court denied the motion.

On June 30, 2006, appellants filed a notice of appeal from the circuit court's June 1 order revising the judgment and reducing the award and, on September 5, 2006, appellants filed a subsequent appeal from the circuit court's August 10 Order denying appellants' motion for a new trial. With the second notice of appeal, appellants included a request that both appeals be joined and treated as a consolidated appeal. Thus, appellants appeal from the circuit court's Orders of July 12, 2006 and August 10, 2006. Additional facts will be provided as warranted.

## LEGAL ANALYSIS

## I

## REVISION OF JUDGMENT

Appellants contend that the trial court's order revising the judgment and reducing appellants' damages award to $1 from a jury award of $75,000 constituted legal error. Although a trial court has some discretion to revise a jury verdict, that discretion is not boundless and if the trial court's actions are "clearly arbitrary or [have] no sound basis in law or in reason," revisory actions are subject to review. *Wormwood v. Batching Systems, Inc.*, 124 Md.App. 695, 700, 723 A.2d 568 (1999). We will not reverse unless there is grave reason to do so. *Id.* We explained in *Wormwood* that "[t]he real question is whether justice has not been done, and our review of the exercise of a court's discretion will be guided by that concept." *Id.*

Appellees counter that appellants failed to present any evidence to link the breach of the 2001 Agreement with losses purportedly suffered and, thus, the trial court acted well within its broad discretion in revising the damages awarded to appellants. "The amount of damages recoverable for breach of contract is that which will place the injured party in the monetary position he would have occupied if the contract had

been properly performed." *Hall v. Lovell Regency Homes Ltd. P'ship,* 121 Md.App. 1, 12, 708 A.2d 344 (1998). Thus, according to appellees, appellants failed to prove compensatory damages to a reasonable certainty and may not recover damages that are based on speculation or conjecture. *Asibem Assocs., Ltd. v. Rill,* 264 Md. 272, 276, 286 A.2d 160 (1972) (stating that failure to prove compensatory damages entitles a plaintiff to nominal damages only).

The trial court stated that "while there was *some* evidence of diminution of profits by [appellees] and some tangential evidence involving tax returns that purportedly showed the same, it was the [appellants'] burden to show by a preponderance of the evidence that it was the [appellees'] breach that in fact caused those consequential damages." In regard to how appellants should have proceeded, the court found that [appellants] were "mandated to go a little further in connecting the dots to prove damages and cannot simply assert that various documents 'speak for themselves.' "

Appellants contend that a trial court may not substitute its own judgment for that of the jury. The trial court can correct, remold or reform a verdict so as to express the jury's clear and definitely manifested intention, but in revising the damages, cannot substitute its intentions for that of the jury.

According to appellants, the jury considered and rejected their prerogative to award appellants nominal damages and, instead, awarded appellants $75,000 in damages. Thus, the jury clearly manifested its intention not to award nominal damages. The trial court's revision, they claim, expressly countermanded the jury's intention.

The trial court's order stated that, pursuant to Maryland Rule 2–535, it found that the jury verdict was unreasonable in light of appellants' proof of damages and the order therefore granted appellees' motion to revise the judgment. Preliminarily, we pause to clarify what we are tasked to review on this appeal. Appellants have appealed from the order of the circuit court denying their motion for a new trial entered on August 10, 2006. They have also appealed from the court's

order dated June 1, 2006, in which the court denied appellee's motion for judgment notwithstanding the verdict, but granted their motion to revise the jury award, reducing it from $75,000 to the nominal award of $1.00, pursuant to Maryland Rule 2–535. Thus, in a determination of the propriety of the court's rulings, we must engage in an analysis of the proper bases for the grant or denial of a motion requesting that the court exercise its revisory power, a motion for new trial and a motion for judgment notwithstanding the verdict.

### i.
### MARYLAND RULE 2–535[3]

Maryland Rule 2–535 provides:

**Rule 2–535. REVISORY POWER**

(a) Generally.—On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment and, if the action was tried before the court, may take any action that it could have taken under Rule 2–534.

As indicated, *supra,* in an action tried before the court, the limitation on the court's revisory power is prescribed by "any action that it could have taken under Rule 2–534," Motion to Alter or Amend a Judgment—Court Decision, which provides:

In an action decided by the court, on motion of any party filed within ten days after entry of judgment, the court may open the judgment to receive additional evidence, may amend its findings or its statement of reasons for the decision, may set forth additional findings or reasons, may enter new findings or new reasons, may amend the judgment, or may enter a new judgment. A motion to alter or amend a judgment may be joined with a motion for new trial.

---

**3.** Subsections (b), (c) and (d) of Rule 2–535, not relevant here, provide for exercise of the court's revisory power in cases involving fraud, mistake or irregularity, newly discovered evidence and clerical mistakes, respectively.

Further explicating the revisory power of the court, noted commentators have observed:

> On a motion to revise a judgment entered on the verdict of a jury [under 2-535],[4] the court's power to revise the judgment is no greater than the power it had to grant a judgment notwithstanding the verdict or new trial under Rules 2-532 and 2-533. Any other result would invade the

---

**4.** Although the Court of Appeals has opined that the revisory power granted by Maryland Rule 2-535 is not applicable for matters tried before a jury, we are unable to confirm that reading of the Maryland Rules. *Nina & Nareg, Inc. v. Movahed,* 369 Md. 187, 194 n. 4, 798 A.2d 557 (2002) ("Rules 2-534 and 2-535(a) state that they are only applicable to actions tried before the court, *not a jury").* (Emphasis added.) More specifically, footnote 4 states that "[t]he language in Rules 3-534 and 3-535 and Rules 2-534 and 2-535 are the same except Rules 2-534 and 2-535(a) state that they are only applicable to actions tried before the court, not a jury." The Court of Appeals has opined that trial courts have broad discretion to revise a judgment to ensure that "technicality does not triumph over justice." *Haskell v. Carey,* 294 Md. 550, 558, 451 A.2d 658 (1982). A party moving within ten days for "MOTION FOR JUDGMENT NON OBSTANTE VEREDICTO, OR IN THE ALTERNATIVE, A NEW TRIAL OR A REMITTITUR" was held to invoke the general revisory power of the trial court pursuant to 2-535(a). *See Allstate Ins. Co. v. Miller,* 315 Md. 182, 188–89, 553 A.2d 1268 (1989). Maryland Rule 2-535 provides in pertinent part that "[o]n motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment. . . ."

The Rule continues that "and, if the action was tried before the court, may take any action that it could have taken under Rule 2-534." Md. Rule 2-535(a). Were the rule meant to extinguish the revisory power of the court in jury trials, there would be no reason to include the "and" followed by reference to Maryland Rule 2-534. Section (a) was derived from former Rule 625(a). Paul V. Niemeyer & Linda M. Schuett, Maryland Rules Commentary 458 (3rd Ed.2003). Rule 625 was adopted to change the court's inherent general revisory power from that of "term of court" to a 30–day period. *Id. See also Ayre v. State,* 291 Md. 155, 433 A.2d 1150 (1981) (Ayre was convicted by a jury for distributing obscene matter). We have observed that there are no jury trials conducted in the district courts of Maryland. *In re Jeannette L.,* 71 Md.App. 70, 76, 523 A.2d 1048 (1987). Thus, in *Nareg,* where the Court was opining that the rules are the same as to language and that case law concerning the application of the language in 3–534 and 3–535 and 2–534 and 2–535 is the same, we presume the Court meant to hold that the only difference was the fact that the matters were not tried before a jury in the district courts and, thus, meant 3–534 and 3–525 in its comparison of the two sets of rules.

fact finding province of the jury. The trial court otherwise has broad discretion to revise the judgment to ensure that "technicality does not triumph over justice."

*Haskell v. Carey,* 294 Md. 550, 558, 451 A.2d 658, 663 (1982). On a motion to revise a judgment entered on the decision of the court, the court may take the same action it could have taken on a motion to alter or amend under Rule 2–534. Because the court made the decision upon which the judgment was entered, it may change its mind entirely, modify the judgment or strike the judgment and receive additional evidence.

Paul V. Niemeyer & Linda M. Schuett, Maryland Rules Commentary 448 (3rd Ed.2003), p. 460.

The above passage from the treatise of Niemeyer & Schuett provides a luminous explication of the relations and distinctions between Maryland Rules 2–535, 2–534, 2–532 and 2–533. In the appeal currently under review, we are tasked to determine the scope of the trial judge's authority to, in essence, substitute his judgment for the verdict rendered by the jury. The soundness of the rationale expressed by Niemeyer and Schuett for drawing a distinction between the more expansive authority to revise a judgment under Rule 2–534, in contrast to Rule 2–535, is beyond cavil, because, in such case, the court, in the first instance, made the decision upon which the judgment was entered and any change made—whether the entry of an entirely different judgment, modification of its judgment or the striking of the judgment and receipt of additional evidence—it in no way implicates invasion of the fact finding province of the jury.

The excerpt from Maryland Rules Commentary, *supra,* postulates further that the court's power to revise a judgment can be no greater than the power it has to grant a judgment notwithstanding the verdict or new trial under Rules 2–532 and 2–533 without invading the fact finding province of the jury. Because the explication of Rules 2–535, 2–532 and 2–533 is expressed in terms of the interplay between these rules, an

examination of the authority of the court to alter the jury's ultimate determination, pursuant to these rules, is instructive.

### ii.

Rule 2–533, Motion for New Trial, provides, in pertinent part:

a) Time for Filing. Any party may file a motion for new trial within ten days after entry of judgment. A party whose verdict has been set aside on a motion for judgment notwithstanding the verdict or a party whose judgment has been amended on a motion to amend the judgment may file a motion for new trial within ten days after entry of the judgment notwithstanding the verdict or the amended judgment.

\* \* \*

(b) Grounds. All grounds advanced in support of the motion shall be filed in writing within the time prescribed for the filing of the motion, and no other grounds shall thereafter be assigned without leave of court.

(c) Disposition. The court may set aside all or part of any judgment entered and grant a new trial to all or any of the parties and on all of the issues, or some of the issues if the issues are fairly severable. If a partial new trial is granted, the judge may direct the entry of judgment as to the remaining parties or issues or stay the entry of judgment until after the new trial. When a motion for new trial is joined with a motion for judgment notwithstanding the verdict and the motion for judgment notwithstanding the verdict is granted, the court at the same time shall decide whether to grant that party's motion for new trial if the judgment is thereafter reversed on appeal.

"It is fundamental that the grant or refusal of a new trial is within the sound discretion of the trial court and is not reversible on appeal, at least when the trial court fairly exercised its discretion, and except for the most compelling reasons." *Mack Trucks, Inc. v. Webber*, 29 Md.App. 256, 270, 347 A.2d 865 (1975). "The breadth of a trial judge's discretion

to grant or deny a new trial is not fixed and immutable; rather, it will expand or contract depending on the nature of the factors being considered." *Butkiewicz v. State*, 127 Md. App. 412, 422, 732 A.2d 994 (1999)(citing *Buck v. Cam's Broadloom Rugs, Inc.*, 328 Md. 51, 58–59, 612 A.2d 1294 (1992)). *See also Md. Coal & Realty Co. v. Eckhart*, 25 Md.App. 605, 617, 337 A.2d 150 (1975); *Angell v. Just*, 22 Md.App. 43, 56, 321 A.2d 830 (1974); *Wash., Balt. & Annap. Elec. R.R. Co. v. Kimmey*, 141 Md. 243, 118 A. 648 (1922); 58 Am.Jur.2d, New Trial § 168; J. Poe, 2 Pleading and Practice at Law, (Tiffany ed.), § 338 at 323.

The foregoing denotes the trial judge's virtually unfettered discretion in the decision whether to grant a motion for new trial. We surmise that, although a trial court may exercise no more authority in revising a jury verdict than it may exercise in the grant or denial of a motion for new trial, broader discretion is recognized in the case of the latter because, unless the court can articulate an absolute failure of proof to support the jury verdict, the court's action may well encroach upon the fact finding province of the jury. While the court's power to revise a jury verdict is no more than its authority to grant a new trial, given that the authority to grant a new trial is virtually boundless, the result is that Rule 2–533 delineates the outer limits of the court's authority, which is not inconsistent with the more restrictive view of the court's revisory power under Rule 2–535. Substitution of the court's judgment may well result in invading the fact finding province of the jury under Rule 2–535. The grant of a new trial presents no such result.

### iii.

Maryland Rule 2–532, Motion for Judgment Notwithstanding the Verdict, provides:

**(a) When Permitted.** In a jury trial, a party may move for judgment notwithstanding the verdict only if that party made a motion for judgment at the close of all the evidence and only on the grounds advanced in support of the earlier motion.

\* \* \*

**(c) Joinder With Motion for New Trial.** A motion for judgment notwithstanding the verdict may be joined with a motion for a new trial.

\* \* \*

**(e) Disposition.** If a verdict has been returned, the court may deny the motion, or it may grant the motion, set aside any judgment entered on the verdict, and direct the entry of a new judgment. If a verdict has not been returned, the court may grant the motion and direct the entry of judgment or order a new trial. If a party's motion for judgment notwithstanding the verdict is granted, the court at the same time shall decide whether to grant that party's motion for new trial, if any, should the judgment thereafter be reversed on appeal.

**(f) Effect of Reversal on Appeal.**

(1) *When Judgment Notwithstanding the Verdict Granted.* If a motion for judgment notwithstanding the verdict is granted and the appellate court reverses, it may (A) enter judgment on the original verdict, (B) remand the case for a new trial in accordance with a conditional order of the trial court, or (C) itself order a new trial. If the trial court has conditionally denied a motion for new trial, the appellee may assert error in that denial and, if the judgment notwithstanding the verdict is reversed, subsequent proceedings shall be in accordance with the order of the appellate court.

(2) *When Judgment Notwithstanding the Verdict Denied.* If a motion for judgment notwithstanding the verdict has been denied and the appellate court reverses, it may (A) enter judgment as if the motion had been granted or (B) itself order a new trial. If the motion for judgment notwithstanding the verdict has been denied, the prevailing party may, as appellee, assert grounds entitling that party to a new trial in the event the appellate court concludes that the trial court erred in denying the motion. If the appellate court reverses the judgment, nothing in this Rule precludes it from determining that the appellee is entitled to a new

trial or from directing the trial court to determine whether a new trial should be granted.

In *A.S. Abell Co. v. Skeen*, 265 Md. 53, 59, 288 A.2d 596 (1972) (abrogated on other grounds by *Buck v. Cam's Broadloom Rugs, Inc.*, 328 Md. 51, 612 A.2d 1294 (1992)), the Court of Appeals declared that, with respect to former Rule 563, dealing with the procedures involved in making a motion for a judgment n. o. v., the "Rule shall not apply to cases tried before the court without a jury. It is quite clear, not only from this rule but also from out decisions, that a motion n. o. v. has no place in a non-jury trial." *See also Md. Lumber Co. v. Legum*, 197 Md. 483, 485, 80 A.2d 34 (1951) (decided under predecessor rule); *Harris v. Kirshner*, 194 Md. 139, 147, 70 A.2d 47 (1949).

■ The effect of the grant of judgment notwithstanding the verdict is similar to a Rule 2–535 action because it operates to supplant the jury's verdict, unlike the grant of a motion for new trial, in which the movant gets a second chance to present his/her case before a new jury, with the prospect of securing a jury verdict, unaffected by judicial alteration. For that reason, the guideposts are more definitive, delimiting the circumstances in which we will uphold a court's revision of the jury verdict. The bedrock principle justifying the grant of a judgment n.o.v. is when the evidence, at the close of the case, taken in the light most favorable to the nonmoving party, does not legally support the nonmoving party's claim or defense. *Jacobs v. Flynn*, 131 Md.App. 342, 353, 749 A.2d 174 (2000) (citing *Bartholomee v. Casey*, 103 Md.App. 34, 51, 651 A.2d 908 (1994), *cert. denied*, 338 Md. 557, 659 A.2d 1293 (1995)).

■ The denial of a judgment n.o.v. will be upheld when, after resolving all conflicts in the evidence in favor of the plaintiff and assuming the truth of all evidence and permissibly deducible inferences therefrom, the evidence tends to support the plaintiff's right to recover. *Id.* (quotations omitted). *See Houston v. Safeway Stores, Inc.*, 346 Md. 503, 521, 697 A.2d 851 (1997) (quoting *Smith v. Bernfeld*, 226 Md. 400, 405, 174 A.2d 53 (1961)). Thus, it is principally when there is

no competent evidence or inferences deducible therefrom to support the nonmoving party that the court will be justified in granting a judgment n.o.v. In other words, the court must then decide a question of law. A grant of a motion for judgment n.o.v., while encroaching on the province of the jury, is permitted only when the evidence and permissible inferences permit only one conclusion with regard to the ultimate legal issue. Such a limitation would also apply to the court's grant or denial of a motion to revise a jury verdict, pursuant to Rule 2–535.

■ If the evidence, however, does not rise above speculation, hypothesis, and conjecture, and does not lead to the jury's conclusion with reasonable certainty, then the denial of the JNOV was error. *See Bartholomee v. Casey,* 103 Md.App. at 51, 651 A.2d 908. Nevertheless, only where reasonable minds cannot differ in the conclusions to be drawn from the evidence, after it has been viewed in the light most favorable to the plaintiff, does the issue in question become one of law for the court and not of fact for the jury. *Pickett v. Haislip,* 73 Md.App. 89, 98, 533 A.2d 287 (1987), *cert. denied,* 311 Md. 719, 537 A.2d 273 (1988).

In *Mahler v. Johns Hopkins Hosp., Inc.,* 170 Md.App. 293, 317, 907 A.2d 276 (2006), we described the trial judge's discretion to grant or deny a motion for judgment notwithstanding the verdict as follows:

"[A] motion ... n.o.v. tests the legal sufficiency of the evidence," and "is reviewed under the same standard as a judgment granted on motion during trial." "A party is not entitled to judgment unless evidence on the issue and all inferences fairly deducible therefrom, when viewed in the light most favorable to the party against whom the motion is made, are such as to permit only one conclusion with regard to the issue." "To this end, we must assume the truth of all credible evidence and all inferences of fact reasonably deductible from the evidence supporting the party opposing the motion." "[I]f there is any competent evidence, however slight, leading to support the plaintiff's right to recover,

the case should be submitted to the jury and the motion for directed verdict or the motion for judgment n.o.v. denied." (Citations omitted.)

Describing how the grant of a judgment n.o.v. facilitates judicial economy, the Court of Appeals, in *GMC. v. Seay,* 388 Md. 341, 879 A.2d 1049 (2005), observed:

At present when a party moves at the close of the evidence for a directed verdict, the Court faces a dilemma if the question is doubtful. If the verdict is directed and the ruling reversed on appeal, a new trial is required; while if the lower court refuses the motion, but concludes after the verdict that the motion should have been granted, it can only grant a new trial, although the Court of Appeals could now enter the proper judgment.

*Id.* at 353, 879 A.2d 1049.

To correct this, many states have authorized the lower court to enter judgment notwithstanding the verdict. Under this practice, after the verdict or disagreement of the jury, the party who moved for the directed verdict may renew his motion within a specified time, and the court, if convinced that judgment should have been directed, may enter judgment accordingly despite the verdict or disagreement of the jury. The opposing party may, of course, appeal from this ruling and the upper court, if it reverses on this ground, may reinstate the verdict.

*Id.* at 353, 879 A.2d 1049.

#### iv.

In *Board of Trustees of Baltimore County Community Colleges v. RTKL Associates, Inc.,* 80 Md.App. 45, 52–53, 559 A.2d 805 (1989), we considered a claim by the appellant that the trial court's revision of a jury verdict was in error because it effectively deprived it of any recovery and transformed what the jury clearly meant as a contribution verdict into a verdict for indemnity. Finding that there was no evidence that the jury wished to shift the entire loss for damages for partial collapse of the roof of the appellant's physical education

complex from the architectural firm, RTKL Associates, Inc., to the subcontractor, James H. Carr, Inc., and the general contractor, Carl H. Gonnsen & Sons, Inc., we discussed the limitations of the court's authority to revise a jury verdict:

A trial court is vested with a very limited power to correct a jury verdict which is defective in form, but which in substance clearly and definitively expresses the jury's intention. *Traylor v. Grafton,* 273 Md. 649, 683, 332 A.2d 651 (1975). The trial court can correct, remold, or reform such a verdict so as to express the jury's clear and "definitely manifested" intention. *Polkes & Goldberg Ins., Inc. v. General Ins. Co. of America,* 60 Md.App. 162, 167, 481 A.2d 808 (1984), *cert. denied,* 302 Md. 288, 487 A.2d 292 (1985). In fact, this power of revision has sometimes been expressed as a duty. For example, in *Sun Cab Co. v. Walston,* 15 Md.App. 113, 161–62, 289 A.2d 804 (1972), *affirmed in part and reversed in part,* 267 Md. 559, 298 A.2d 391 (1973), we stated that it was "the duty of the court to work the verdicts into form and make them serve" if the jury's intention is "manifest and beyond doubt" but the verdict is defective in form. In *Montgomery Ward & Co. v. Keulemans,* 275 Md. 441, 446–47, 340 A.2d 705 (1975), the Court remanded for the trial court to reform a malicious prosecution damage award to include $350 that had been mistakenly assessed by the jury as a part of its verdict for false arrest damages. The Court in *Montgomery Ward* specifically rejected the contention that the verdict could only be corrected by the jury, or by the court in the jury's presence. The Court pointed out, however, that the contention would be true only "if the verdict were fatally defective, as, for example, would be a verdict which fails to assess damages." *Montgomery Ward,* 275 Md. at 447, 340 A.2d 705. The College presents us with no Maryland case, nor have we located one independently, which presents a factual scenario similar to the instant verdict. We are convinced, however, that the trial court's reformation reflected neither what the jury intended nor what the instructions mandated.

In *Polkes & Goldberg Ins., Inc. v. General Ins. Co. of America,* 60 Md.App. 162, 481 A.2d 808 (1984), Thompson's Restaurant, the insured of appellant, Polkes and Goldberg Insurance, Inc., sued Polkes and its principal, General Insurance Company of America, for breach of contract for refusing to pay a claim for damage caused by fire, which forced closure of the business from May 12 to September 23, 1980. The jury returned a verdict in favor of Thompson's against General as principal in the amount of $168,386.94 and then against Polkes, for contribution to General, in the amount of $2,479. In response to the court's query as to whether the jury's finding that General was vicariously liable included a finding that Polkes was negligent, the jury answered in the affirmative and, after further deliberation, returned a verdict in favor of Thompson's against Polkes in the amount of $2,479.00.

By memorandum and order dated October 17, 1983, the trial judge "reformed" the jury's verdict, then directing the clerk to enter $168,386.94 in favor of Thompson against Polkes, replacing the jury verdict of $2,479.00; $168,386.94 in favor of Thompson's against General, the same amount returned by the jury; a defendant's verdict in favor of Polkes in Thompson's claim for breach of contract, the jury having failed to return a verdict; a defendant's verdict in favor of General on Thompson's claim for breach of contract; and $168,386, rather than the jury verdict of $2,479.00, in favor of General on its cross-claim against Polkes. The issue which had been posed to the jury with respect to the negligence claim against the agent was whether he had failed to write an adequate amount of coverage and whether the insurer, as principal, was responsible for the actions of its agent. In concluding that the trial judge erred in revising the jury's verdict, we penned:

> Generally, a judge has no power to reform a jury's verdict. The Court of Appeals of Maryland in *Gaither v. Wilmer,* 71 Md. 361, 367, 18 A. 590, 592 (1889), said, "no material alteration can be made by the jury in their verdict, either in a civil or criminal case, after it has been recorded, and, if this can not be done by the jury, *a fortiori* ... [it can] not be done by the court or the Judge." As with most, if not

all, general rules, there are exceptions. A trial judge is *empowered to correct, remold or reform the verdict of a jury so as to express the jury's intent if that intent is, beyond doubt, clearly and definitely manifested. Montgomery Ward & Co. v. Keulemans,* 275 Md. 441, 340 A.2d 705 (1975); *Traylor v. Grafton,* 273 Md. 649, 332 A.2d 651 (1975). (Emphasis added).

*Id.* at 167, 481 A.2d 808.

After a discussion of the revisory power of judges in sister jurisdictions,[5] we turned to a consideration of Maryland law, with respect to a judge's revisory power:

Trial judges may, under Maryland law, change a verdict and remold it if the modification is one of form, *Davis v. Board of Education,* 168 Md. 74, 78–79, 176 A. 878, 880 (1935), and "the intention of the jury is manifest and beyond doubt," *Hawks v. Crofton,* 2 Burrows 698, 699 (K.B.1758), quoted in *Diamond State Telephone Co. v. Blake,* 105 Md. 570, 575, 66 A. 631, 633–34 (1907); *Browne v. Browne,* 22 Md. 103, 115 (1864). *See also Montgomery Ward & Co. v. Keulemans,* 275 Md. 441, 340 A.2d 705 (1975); *Traylor v. Grafton,* 273

---

5. We observed, *id.* at 169, 798 A.2d 557:

Maryland has but one case in which the trial judge endeavored to correct an improper verdict after it was recorded, *see Gaither v. Wilmer,* 71 Md. 361, 18 A. 590 (1889). Other jurisdictions have, however, held that a trial judge may not invade the province of the jury under the guise of amending the verdict. *Fitzhugh v. Elliott,* 237 Ark. 88, 91, 371 S.W.2d 533, 535 (1963) (court cannot "modify a jury verdict on a question of liability and substitute its own"); *Harrison Construction Co. v. Nissen,* 119 Colo. 42, 47, 199 P.2d 886, 888–89 (1948) (court may not correct a verdict on a matter of substance without allowing it, in any case, to set aside a verdict arbitrarily and substitute a completely contrary finding); *Storey v. Castner,* 314 A.2d 187, 193 (Del.Supr.Ct.1973) ("courts will yield to the verdict of the jury where any margin for reasonable difference of opinion exists...."); *Roadruck v. Schultz,* 333 Ill.App. 476, 489–90, 77 N.E.2d 874, 882 (1948) ("the judge cannot, under the disguise of amending the verdict, invade the exclusive province of the jury, or substitute his judgment for theirs" [citations omitted] ); *Bronchak v. Rebmann,* 263 Pa.Super. 136, 139, 397 A.2d 438, 439 (1979) ("[i]f the verdict bears a reasonable resemblance to the proven damages, it is not the function of the court to substitute its judgment for that of the jury."). *See generally,* 76 Am.Jur.2d Trial § 1208 (1975).

Md. 649, 332 A.2d 651 (1975); *Sergeant Co. v. Clifton Building Corp.*, 47 Md.App. 307, 423 A.2d 257 (1980).

The *Polkes* Court warned of the deleterious consequences of abrogating the will of the jury:

> The jury's verdicts on special issues in the case at bar were not altered as to form but rather as to content. The jury expressly found that Polkes was liable to Thompson's for $2,479.00. The judge changed that figure to $168,386.94. The jury expressly found that Polkes was liable to General in the sum of $2,479.00 by way of contribution to General's payment of damages to Thompson's; the judge changed that figure to $168,386.94. In effect, the judge wiped out the jury's verdict with respect to Polkes's liability to Thompson's and General. He then substituted for the jury's verdicts what he thought the verdicts should be.

> It is obvious to us that the jury intended General to pay Thompson's and that Polkes was to reimburse General to the extent of $2,479.00, and no more. The trial judge had available remedies other than "reforming" the verdict. He could, for example, have granted a new trial. Instead, in the guise of reforming the verdict, he wrote a new one. Patently deciding that the jury must have been confused, the judge did precisely what *Gaither v. Wilmer* says should not be done-he "invaded the exclusive province of the jury, and substituted his verdict for theirs." 71 Md. at 368, 18 A. at 592.

> *The danger in permitting judges to alter a jury's verdict, other than as to form, is that such a practice would not only erode the concept of a trial by jury, it would eradicate it. Juries would serve little, if any, purpose other than window dressing because of the judge's ability to abrogate whatever the jury did by substituting his own findings. We think the right to a trial by jury does not mean a jury trial with an ultimate verdict by a judge.*

> Whatever bounds there may be to reforming a verdict as to form, we are convinced that increasing the amount of the

verdict from $2,479.00 to $168,386.94 is more than mere form; it is substance.

*Id.* at 169–71, 481 A.2d 808 (emphasis added).

In a recent pronouncement of the scope of Maryland Rule 2–535, the Court of Appeals, in *Southern Mgmt. Corp. v. Taha,* 378 Md. 461, 494–95, 836 A.2d 627 (2003), said:

The scope of a court's power under Rule 2–535(a) is broad. In its discretion, a court may modify a judgment if a party files a motion seeking to revise or set aside that judgment within 30 days after its entry.

* * *

Although other cases of this Court have characterized the court's discretion to revise a judgment within 30 days as "unrestricted," *see, e.g., Tandra S. v. Tyrone W.,* 336 Md. 303, 313, 648 A.2d 439, 444 (1994) ("A circuit court has unrestricted discretion to revise a judgment within thirty days after it is entered."), *superceded by statute on other grounds as stated in Walter v. Gunter,* 367 Md. 386, 400, 788 A.2d 609, 617 (2002); *Platt v. Platt,* 302 Md. 9, 13, 485 A.2d 250, 252 (1984) (describing the law governing the power of a court over an enrolled decree as "firmly established" and stating that, "for a period of thirty days from the entry of a law or equity judgment a circuit court shall have 'unrestricted discretion' to revise it."); *Maryland Lumber Co. v. Savoy Constr. Co.,* 286 Md. 98, 102, 405 A.2d 741, 744 (1979) ("[I] f a motion to revise or set aside a judgment is filed within 30 days of the entry of a judgment, a trial court has unrestricted discretion to revise the unenrolled judgment and that discretion has to be liberally exercised"), we believe that the term "broad discretion" best describes the nature and scope of a court's power to revise a judgment under Rule 2–535, because a trial court's discretion clearly is subject to appellate review.

The above passage from *Taha,* we think, speaks directly to the term, "unrestricted," as applied to the court's discretion under Rule 2–535. Recognizing the well-ensconced, broad discretion reiterated in prior Maryland appellate decisions, the

Court of Appeals, nevertheless, dispels the notion that the discretion under the Rule is boundless, but, rather, it has limitations. It is, to be sure, "subject to appellate review." Simply put, our review of the court's discretion in the case *sub judice* turns on whether the exercise of the court's revisory power encroached on the fact finding province of the jury.

**V.**

■ Appellees filed their motion within both the thirty-day time limit allowed for the trial court to exercise its general revisory power and within the ten days that stayed the time for appeal. *Unnamed Attorney v. Attorney Grievance Comm'n*, 303 Md. 473, 486, 494 A.2d 940 (1985); *see also Allstate Ins. Co. v. Miller*, 315 Md. 182, 189, 553 A.2d 1268 (1989) (quoting Md. Rule 2–535(a) and citing Paul V. Niemeyer & Linda M. Schuett, Maryland Rules Commentary 323 (1984) discussing potential grounds for the motion).

The trial judge expressed his intention that the jury should find nominal damages. On February 17th, the court, in finding that the evidence was sufficient to submit the case to the jury, ruled:

And notwithstanding a fairly compelling argument from the [appellee] that the evidence isn't sufficient to get to the jury which in this case is that fact finder and that essentially that judgment should be awarded in favor of the [appellee], the Court respectfully disagrees. The rule requires that the Court view the evidence in a light most favorable to the non-moving party. In this case the non-moving party is the [appellant]. Having considered and reviewed my notes and the evidence in this case, the Court will deny the motion and the case will go to the jury. The [appellant] may not have met his requirements of proving his damages to the extent that the [appellant] is asking for them but the jury could very well find in favor of the [appellant] and award the [appellant] nominal damages. It's not, the evidence doesn't have to be that the [appellant] has proven up the damages for which they are praying. And there is, in fact, a jury instruction on nominal damages and so the motion is denied.

As to damages, the trial judge stated that "the evidence doesn't have to be that the [appellants have] proven up the damages for which they are praying. And there is, in fact, a jury instruction on nominal damages and so the motion [for judgment] is denied." The following exchange ensued:

[THE COURT]: And the instruction on nominal damages, you're going to argue that [appellants haven't] proven any damages.

[Appellees' Counsel]: It wasn't the nominal one in what was submitted.

[Appellants' Counsel]: Nobody was asking for the nominal one, Your Honor.

[Appellees' Counsel]: Are you talking about the—

[THE COURT]: I won't give it if you don't want it but—

[Appellants' Counsel]: Nobody was asking for it.

\* \* \*

[THE COURT]: Nominal damages. A party to a contract which has been broken may recover nominal damages of $1 even though he or she fails to prove that he or she suffers actual damages. That gets at the issue that you argued to the [c]ourt that assuming arguendo the jury gets past the breach of contract.

[Appellees' Counsel]: I will reserve my rights to argue to you in the event of a jury verdict. I do not want the nominal damages dropped.

[Appellants' Counsel]: Nor do we, Your Honor.

[THE COURT]: Very well.

The trial court then delivered the following jury instruction:

A contract is an agreement between two or more parties creating rights or obligations.

In an action for breach of contract, the [appellant] may recover those damages which naturally arise from the breaking of the contract. Those damages are the consequences of breaking the contract which the [appellee] had reason to foresee would take place or such damages as may

reasonably be supposed to have been contemplated by both parties when they made the contract.

The [appellant] is entitled to be placed in the same situation as if the contract had not been broken. The damages, therefore, are the profits the [appellant] would've made had the contract been performed. These damages are arrived at after deducting the amount that it would have cost the [appellant] to have performed the contract.

It is well established in Maryland that damages based on speculation or conjecture are not recoverable as compensatory damages. *See Wlodarek v. Thrift*, 178 Md. 453, 461, 13 A.2d 774 (1940) (holding that there is a right to at least nominal damages where damages cannot be proven). Nominal compensatory damages are damages awarded when an injury has been proven, but it is impossible to calculate the damages therefrom. *Shabazz v. Bob Evans Farms, Inc.*, 163 Md.App. 602, 639, 881 A.2d 1212 (2005). A wrong without attendant harm in Maryland is compensable only by nominal damages. *Mallis v. Faraclas*, 235 Md. 109, 116, 200 A.2d 676 (1964) (citing *Gilbert Constr. Co. v. Gross*, 212 Md. 402, 412, 129 A.2d 518 (1957)); *see also Wlodarek, supra* ("for every breach of contract, there is a right of recovery for at least nominal damages").

A review of the record shows that no nominal damage instruction was given to the jury. Thus, rather than fail to heed a jury instruction, the jury considered the evidence before it and rendered its decision. Appellees' argument that *Allstate Ins. Co. v. Miller*, 315 Md. 182, 553 A.2d 1268 (1989) stands for the proposition that the court may revise a jury verdict it finds objectionable is misplaced. In *Allstate*, the Court allowed Allstate to attach its policy to the motion for revision that proved the policy limits were $50,000. Miller argued that, because Allstate failed to offer the policy at trial, it could not use the policy to support its claim that there should be a cap on the award. That is not the case at bar. There was no ceiling proved by appellees that the jury in the instant case exceeded.

A court may not invade the province of the jury by changing a jury verdict unless the court is remolding the verdict to reflect the jury's intention. *Polkes & Goldberg Ins., Inc. v. Gen. Ins. Co. of Am., supra.* In the instant case, testimony indicated that the Agreement was breached and, as a result, appellants lost income from both diversion of new patients and by inflation of overhead expenses. The jury could reasonably have found that compensatory damages were proper. Thus, the trial judge was not remolding the verdict to comport with the jury's intention and, instead, did so to comport with his own view of the evidence from which a fact-finder could conclude that the diminution in appellants' practice resulted from appellees' breach. Rather than expressing the jury's intent in remolding or reforming the verdict, the court substituted its own findings in reaching the conclusion that appellants' claim only warranted nominal damages. In so doing, the court erred, requiring us to remand the case and to direct that the court reinstate the $75,000 jury award.

## II

Appellants next argue that the circuit court improperly excluded the testimony of Kohler, appellants' damages expert and, as a result, appellants were unable to fully present their case in support of their damages to the jury. Appellants urge this Court to grant a partial new trial as to damages because, had Kohler been permitted to testify at trial, the jury would have had the benefit of her opinion and analysis as to the damages appellants suffered. Further, because the jury did not have the benefit of Kohler's opinion in this regard, the jury awarded damages that were substantially less than that to which appellants were entitled and, thus, appellants are entitled to a new trial on damages.

That Kohler, an accountant, would assess to what extent appellees improperly charged appellants was a core component of appellants' case. In the absence of general ledgers, Kohler used "piecemeal financial records produced by [appellees], along with bank records subpoenaed from third-parties" to create material from which to testify. Kohler used the

general ledgers she received from the years 2003 and 2004 to reconcile her previous calculations.

Appellants contend that all parties and the trial judge agreed to the qualifications of the expert and that she would have testified based upon the best available evidence as to appellants' damages, but she was improperly excluded based upon the Maryland Rules of Evidence.

As to expert testimony, Maryland Rule 5–702 provides that

Expert testimony may be admitted, in the form of an opinion or otherwise, if the court determines that the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. In making that determination, the court shall determine (1) whether the witness is qualified as an expert by knowledge, skill, experience, training, or education, (2) the appropriateness of the expert testimony on the particular subject, and (3) whether a sufficient factual basis exists to support the expert testimony.

Kohler's testimony was improperly excluded, according to appellants, because the trial court found that there was no factual basis for her findings, notwithstanding that the factual basis for an expert's opinion is assessed under expansive standards. Accordingly, in the instant case, at the time appellants sought Kohler's opinion, they maintain that there was substantial evidence in the record from which she could render an opinion as to appellants' losses. Further, citing *Attorney Grievance Comm'n of Md. v. Nothstein*, 300 Md. 667, 683–84, 480 A.2d 807 (1984), it is asserted that Kohler could rely on evidence not in the record. Dr. Kleban cites *Tucker v. Univ. Specialty Hosp.*, 166 Md.App. 50, 61, 887 A.2d 74 (2005) (stating that "in cases requiring expert testimony, experts may testify not only to their understanding of the facts and circumstances, but they may also use their knowledge, training, and experience to draw inferences from those facts and circumstances"), for the proposition that Maryland courts clearly contemplate that experts will draw inferences and

engage in their analysis based upon their professional training and experience.

Finally, as appellants "substantially complied" with the scheduling requirements of the trial court, Kohler should have been allowed to testify as to future lost income. As Maryland courts do not exclude expert testimony lightly and appellees had adequate opportunity to explore the full range of opinions Kohler intended to offer at trial on two separate occasions, appellants contend that appellees are now precluded from claiming prejudice. *See Tucker v. Ohtsu Tire & Rubber Co. Ltd.*, 49 F.Supp.2d 456, 459 (D.Md.1999) (finding additional expert opinions should not be excluded when "counsel made no efforts to obtain additional discovery from" an expert who submitted an additional report). Thus, according to appellants, the trial court "championed form over substance in derogation of the letter and spirit of the Maryland Rules."

The Court of Appeals has opined:

It is well-settled that the decision to admit or exclude expert testimony is within the discretion of the trial judge. *Hartless v. State*, 327 Md. 558, 576, 611 A.2d 581, 590 (1992); *Simmons v. State*, 313 Md. 33, 43, 542 A.2d 1258, 1263 (1988); *Franceschina v. Hope*, 267 Md. 632, 636, 298 A.2d 400, 403 (1973). A trial judge's decision to admit or exclude expert testimony will be reversed only if it is founded on an error of law or some serious mistake, or if the judge has abused his discretion. *Hartless*, 327 Md. at 576, 611 A.2d at 590.

*Franch v. Ankney*, 341 Md. 350, 364, 670 A.2d 951 (1996); *see also Sippio v. State*, 350 Md. 633, 648, 714 A.2d 864 (1998) (stating that on appeal, such a ruling may be reversed if the trial court clearly abused its discretion or founded its decision on an error of law). In *Ankney*, the Court held that the exclusion of expert testimony, leaving a party without any expert testimony necessary for his or her case, is not in and of itself an abuse of discretion. *Ankney*, 341 Md. at 365, 670 A.2d 951. ("Trial judges are not barred from striking expert

opinions that are based on an unsound or deficient premise simply because those opinions are vital to a party's case").

 Similarly, in the case at bar, the trial judge disallowed Kohler's testimony, reasoning that the basis for exclusion was procedural. Appellees posit that appellants did not include future lost wages as a topic of testimony for Kohler and, thus, "for not adhering to the scheduling conference" and not putting appellees on notice as to what Kohler would testify, the trial court denied her testimony as to that subject matter. The issue, according to the trial court, was "not whether [appellees] knew or should have know[n] that a particular issue was in the case," but whether appellees would have prepared their case differently had they been given the information. As we see it, the trial court acted within its discretion. *Helman v. Mendelson,* 138 Md.App. 29, 43–47, 769 A.2d 1025 (untimely filing of expert report was properly excluded because discovery violation was substantial and prejudicial as it deprived the opposing party's ability to mount a defense).

 The court excluded Kohler's expert testimony regarding the remainder of her opinions because the court found a lack of proper foundation and, further, that there was nothing so complicated that a jury needed expert testimony. We have held that "[t]he decision to admit or exclude 'expert' testimony is within the broad discretion of the trial court and that decision will be sustained on appeal unless it is shown to be manifestly erroneous." *Wood v. Toyota Motor Corp.,* 134 Md.App. 512, 520 n. 8, 760 A.2d 315 (2000) (quoting *Troja v. Black & Decker Mfg. Co.,* 62 Md.App. 101, 110, 488 A.2d 516 (1985)); *see also Giant Food, Inc. v. Booker,* 152 Md.App. 166, 182 n. 9, 831 A.2d 481 (2003).

The trial court heard testimony from Kohler outside of the presence of the jury and Kohler testified as to the contract in evidence:

[Appellees' counsel]: Okay. And the expenses that were to be shared, as I understand your testimony, what you did is you went back and figured out from your own experience

what seems like it should be a shared expense and what shouldn't be.

[Kohler]: Exactly.

Kohler testified that she relied, in part, on the formula which was based on billing as provided in the agreement and that she did not take into account excludable income of appellees.

The trial court found this to be mere conjecture as acknowledged by Kohler and stated:

> Now, counsel says that an expert needs to come in because there is necessary, it is going to be necessary to prove up damages. He's absolutely correct. But there needs to be a factual basis from which an expert witness can base that testimony. It can't be on mere conjecture.
>
> Now, if this case had started off from the position that an expert witness is going to come in and testify, having reconstructed the practice and given an opinion based upon what she felt or he felt the value of what was taken from the doctor is, we probably wouldn't be in this position that we're in today. But that didn't happen. And so at this point in this case, there is not a sufficient factual basis for expert testimony, and the [c]ourt will disallow it in the [appellants'] case in chief.

The trial court did not abuse its discretion and we will not disturb its decision to exclude the testimony of appellants' expert based upon the lack of factual foundation. It is true that "[a] factual basis for expert testimony may arise from a number of sources, such as facts obtained from the expert's first-hand knowledge, facts obtained from the testimony of others, and facts related to an expert through the use of hypothetical questions." *Sippio*, 350 Md. at 653, 714 A.2d 864. The trial court found that Kohler's testimony indicated that her factual basis was conjecture. She did not employ the formula established in the Agreement and she lacked knowledge regarding sources of appellees' income. Thus, the trial court concluded there were no facts upon which Kohler could form an expert opinion. Further, the court's discretionary finding that the facts as presented were not so complicated as

to require expert testimony must be upheld absent a showing that that decision is manifestly erroneous.

Appellants' demand for a new trial as to damages is rooted in the argument that, because appellants substantially complied with the Maryland Rules, the trial court erred in finding Kohler's connection to the facts of the case tenuous. While it is true that substantial compliance with the Maryland Rules in certain instances will be sufficient, here, the trial court found that appellees were prejudiced and that substantial compliance was therefore not sufficient. *Wormwood*, 124 Md.App. at 702–05, 723 A.2d 568.

In the case at hand, appellants filed their expert designation in accordance with the June 1, 2006 deadline. Appellants' identification of expert and notification clearly do not anticipate Kohler's testimony as to future lost income. Thus, the trial court did not err or abuse its discretion in denying a retrial. As to her further opinions, the court found that Kohler

> ignored the contract while determining how costs and profits should be allocated, matters covered by the contract. When calculating damages, based on a formula of her own creation—which had no relevance to this matter—Ms. Kohler opined based on an incomplete, and ultimately incorrect factual predicate ... the factual basis for her opinions was inadequate, rendering her testimony useless to the jury in deciding this case.

We review the denial of a motion for a new trial under an abuse of discretion standard. *Edsall v. Huffaker*, 159 Md. App. 337, 342, 859 A.2d 274 (2004).

> It is well settled that "[t]he trier of fact may believe or disbelieve, accredit or disregard, any evidence introduced...." A reviewing court may not decide on appeal how much weight should have been given to each item of evidence. *Great Coastal Express, Inc. v. Schruefer*, 34 Md. App. 706, 725, 369 A.2d 118 (1977) (citations omitted). When results cannot be characterized as " 'clearly unjust, we will not find an abuse of discretion whichever way the

trial court may choose to exercise discretion.'" *Holden v. Blevins,* 154 Md.App. 1, 8 n. 9, 837 A.2d 1053 (2003) (quoting *Thodos v. Bland,* 75 Md.App. 700, 712, 542 A.2d 1307 (1988)).

*Id.* The breadth of the trial court's discretion is not fixed or immutable, but, rather expands and contracts "depending upon the nature of the factors being considered, and the extent to which the exercise of that discretion depends upon the opportunity the trial judge had to feel the pulse of the trial and to rely on his own impressions in determining questions of fairness and justice." *Mason v. Lynch,* 151 Md.App. 17, 28, 822 A.2d 1281 (2003) (quoting *Buck v. Cam's Broadloom Rugs, Inc.,* 328 Md. 51, 59, 612 A.2d 1294 (1992)). The Buck Court held that discretion of the trial judge was at its highest when the motion for a new trial "did not deal with the admissibility or quality of newly discovered evidence, nor with technical matters," but instead asked the trial court to draw upon its view of the weight of the evidence. *Buck,* 328 Md. at 59, 612 A.2d 1294.

Appellants argue that a new trial should be granted because Kohler did nothing but review the evidence presented to her and had no choice but to create general ledgers from the documents provided by appellees. Thus, appellants see the exclusion of Kohler's testimony as a reward for appellees' failure to comply with discovery. We hold that the trial court acted within its broad discretion to evaluate the evidence and decide whether to admit expert testimony.

**JUDGMENT REVERSED IN PART AND AFFIRMED IN PART. CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY WITH DIRECTIONS TO REINSTATE JURY AWARD OF $75,000.**

**COSTS TO BE PAID ONE HALF BY APPELLANTS AND ONE HALF BY APPELLEES.**