481 A.2d 808

**POLKES & GOLDBERG INSURANCE, INC.**

**v.**

**GENERAL INSURANCE COMPANY OF AMERICA.**

**No. 1658 Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Oct. 4, 1984.

Certiorari Denied Feb. 5, 1985.

Ashley Joel Gardner, Olney, with whom was Joseph F. Cunningham, Washington, D.C., on the brief, for appellant.

Albert D. Brault, Rockville, with whom were Janet S. Zigler and Brault, Graham, Scott & Brault, Rockville, on the brief, for appellee.

Argued before GILBERT, C.J., and MOYLAN and LISS, JJ.

GILBERT, Chief Judge.

This case involves an insurance agency, Polkes and Goldberg Insurance, Inc. (Polkes), the appellant herein, the insurance company for whom Polkes acted as an agent, General Insurance Company of America (General), appellee, the insured, Thompson's Seafood Restaurant, Inc. (Thompson's), a jury's verdict in favor of Thompson's, and the

question of who will pay this judgment, the judgment itself being unchallenged.

Also involved in this appeal is whether a trial judge may "reform" a jury's verdict.

Polkes maintained an insurance agency agreement with General whereby Polkes was authorized to bind General to comprehensive business insurance coverage on fire-resistant restaurants. Polkes placed a three year comprehensive business insurance policy with General in May, 1978, covering Thompson's. The policy became effective on June 1, 1978.

In May, 1979, Polkes met with Billy Thompson, the owner of the restaurant, for a review of the insurance program. As a result of the review, Polkes recommended that Thompson increase the limit of liability on his business interruption insurance policy from $150,000 to $300,000. Polkes and Thompson both understood that the increase would provide business interruption coverage, without penalty, to a $300,000 limit. Thompson agreed to the increase and Polkes obtained General's endorsement on the policy adjustment.

Approximately one year later, May 12, 1980, Thompson's was damaged by fire. The restaurant was closed for business until September 23, 1980.

Immediately after the fire, General dispatched an adjuster to the restaurant site. After an inspection, the adjuster performed a series of calculations and assured Thompson that the restaurant was fully insured and was not subject to a co-insurance penalty. Thompson was advised to proceed restoring the restaurant.

Subsequently, two other adjusters calculated Thompson's business interruption losses and confirmed that the restaurant was fully covered by insurance. While the repairs were underway, General sent yet another adjuster to the restaurant, who concluded after his evaluation that Thompson's was underinsured and therefore was liable for a co-insurance penalty. Based upon that adjustment, General refused to pay Thompson's claim.

Meanwhile, because of its reliance on General's prior representations that no co-insurance penalty was applicable, Thompson's had continued to carry certain restaurant employees on the payroll. Thompson's total business insurance loss was asserted to be $250,357.

Thompson's, as we have previously said, sued General and Polkes; Thompson's claimed:

1. General was liable for breach of contract by failing to pay the insurance claim.
2. Polkes was liable for negligence by failing to write an adequate amount of insurance coverage.
3. General, as principal, was vicariously liable for the negligence of its agent, Polkes.
4. Polkes was liable for breach of contract by failing to provide $300,000 worth of insurance protection.
5. General was liable for breach of contract by failing to provide $300,000 worth of insurance protection.

Ultimately, the cause was submitted to a jury on five issues which corresponded directly to the five counts contained in Thompson's second amended declaration. Additionally, a sixth question with three subparts pertaining to the cross-claims was put to the jury. The jury returned a verdict in favor of Thompson's against General in negligence, "as the principal responsible for the actions of its agent, Polkes....," in the amount of $168,386.94 on count 3. The jury also decided in favor of the defendant on each cross-claim as to the issue of indemnification. It found, however, that Polkes was liable for contribution to General in the amount of $2,479.00.[1]

---

1. Cross-claim question 6c was put to the jury and answered as follows: Is either Defendant required to make contribution to the other in payment of the damages which you have found in the previous section?

Yes ____✓____          No _____

If yes, in what amount? $2,479 [Answer] [The jury's answer continued with handwritten wording appended below the question which read:] 'To be paid to ... [General] by Polks [sic] & Goldberg.'

After the jury returned the findings, the trial judge asked the panel if their finding that General was vicariously liable included a finding that Polkes was negligent. The jury answered affirmatively, and the trial judge sent them back to answer special issue number two, which addressed the question of Polkes's negligence. The jury returned with a verdict in favor of Thompson's against Polkes in the amount of $2,479.00.[2]

By memorandum and order dated October 17, 1983, the trial judge "reformed" the jury's verdict. He directed the clerk to:

1. Enter a verdict for General as to Count 1. (The jury had not answered the question.)

2. Enter a verdict for Thompson's against Polkes "in the sum of $168,386.94." (The jury had returned a verdict of $2,479.00.)

3. Enter a verdict in favor of Thompson's against General in the amount of $168,386.94. (The same verdict returned by the jury.)

4. Enter a defendant's verdict in favor of Polkes in Thompson's claim for breach of contract. (The jury had returned no verdict.)

5. Enter a defendant's verdict in favor of General on Thompson's claim for breach of contract. (The jury had returned no verdict.)

6. Enter a verdict in favor of General in its cross-claim against Polkes in the sum of $168,386.94. (The jury had returned a verdict in favor of General, but for $2,479.00.)

---

2. The record shows issue number 2 and its answer to be:

   *As to Count 2,* negligence against Polkes & Goldberg Insurance, Inc. in failing to write an adequate amount of interruption/gross earnings endorsement coverage for the Plaintiff, how do you find?

   For Plaintiff ___✓___          For Defendant _____
                                   (Polkes & Goldberg Insur-
                                   ance, Inc.[)]

   If for Plaintiff, in what amount?  2,479.00

Polkes here challenges the trial judge's authority to "reform" the jury verdict.

■ Generally, a judge has no power to reform a jury's verdict. The Court of Appeals of Maryland in *Gaither v. Wilmer*, 71 Md. 361, 367, 18 A. 590, 592 (1889), said, "no material alteration can be made by the jury in their verdict, either in a civil or criminal case, after it has been recorded, and, if this can not be done by the jury, *a fortiori* ... [it can] not be done by the court or the Judge." As with most, if not all, general rules, there are exceptions. A trial judge is empowered to correct, remold or reform the verdict of a jury so as to express the jury's intent if that intent is, beyond doubt, clearly and definitely manifested. *Montgomery Ward & Co. v. Keulemans*, 275 Md. 441, 340 A.2d 705 (1975); *Traylor v. Grafton*, 273 Md. 649, 332 A.2d 651 (1975).

■ In the case *sub judice*, the jury's intent was far from clear and definite. The problem stems from the fact that the five special issues were not complete. Only one of the five dealt with the possibility of negligence by General,[3] and it limited the jury to the extent of General's vicarious liability in negligence.

We infer that when the jury returned the finding that General was vicariously liable in negligence, the trial judge concluded that the verdict embraced, of necessity, that Polkes was also negligent. By definition, the doctrine of *respondeat superior* requires the master (or principal) to answer for the *acts of his servant* (or agent). *See Cox v. Prince George's County*, 296 Md. 162, 460 A.2d 1038 (1983). The trial judge, we believe, was correct in thinking that the jury's finding implicated Polkes. Nevertheless, when the trial judge resubmitted the issue to the jury, that body removed all doubt as to what it meant by its verdict. It is clear that the jury found that Polkes was negligent, and it

---

**3.** The remaining issues concerned breach of contract, both by General and Polkes, and negligence by Polkes.

handed down a verdict against Polkes and in favor of Thompson's for $2,479.00. Moreover, the jury also found in the cross-claim that Polkes was liable to General by way of contribution in the same sum, namely, $2,479.00.

Ordinarily, if the principal is vicariously liable for the negligence of its agent, it is logical to conclude that the agent must have been negligent; but that is not necessarily what would follow in the instant case because of the way in which the issues were posed. The pertinent issues regarding negligence, in any form, are numbers 2 and 3. They read:

2. *As to Count 2*, negligence against Polkes ... in failing to write an adequate amount of interruption/gross earnings endorsement coverage for the Plaintiff, how do you find? ....

3. *As to Count 3*, negligence against General Insurance Company as the principal responsible for the actions of its agent, Polkes ..., how do you find? ....

Significantly absent from issue number 3 is a connection or tie-in with the negligence against Polkes "in failing to write an adequate amount of [business] interruption ... coverage." Issue number 3 addresses the question of vicarious responsibility for the agent's negligence but does not limit the negligence to the writing of the policy. It is, in fact, an all inclusive issue.

Under the issues as presented, the jury could and did find that Polkes negligently failed to write adequate coverage for business interruption. The result of that finding was a verdict against Polkes in favor of Thompson's for $2,479.00.

The instruction given the jury left no doubt but that General was liable in negligence only if Polkes was acting as General's agent and performed his duties in a negligent manner. It is apparent from the answers to the issues that the jury believed that Polkes and General were liable to Thompson's. The jury affixed that liability in definite sums: Polkes was held liable to Thompson's for $2,479.00; General was held liable to Thompson's for $168,386.94. The

jury made its intent crystal clear when it found that Polkes should contribute the sum of $2,479.00 to General as a contribution to the damages General is required to pay Thompson's. We are unwilling to speculate as to how the jury arrived at its verdict.

Maryland has but one case in which the trial judge endeavored to correct an improper verdict after it was recorded, *see Gaither v. Wilmer*, 71 Md. 361, 18 A. 590 (1889). Other jurisdictions have, however, held that a trial judge may not invade the province of the jury under the guise of amending the verdict. *Fitzhugh v. Elliott*, 237 Ark. 88, 91, 371 S.W.2d 533, 535 (1963) (court cannot "modify a jury verdict on a question of liability and substitute its own"); *Harrison Construction Co. v. Nissen*, 119 Colo. 42, 47, 199 P.2d 886, 888–89 (1948) (court may not correct a verdict on a matter of substance without allowing it, in any case, to set aside a verdict arbitrarily and substitute a completely contrary finding); *Storey v. Castner*, 314 A.2d 187, 193 (Del.Supr.Ct.1973) ("courts will yield to the verdict of the jury where any margin for reasonable difference of opinion exists. . . ."); *Roadruck v. Schultz*, 333 Ill.App. 476, 489–90, 77 N.E.2d 874, 882 (1948) ("the judge cannot, under the disguise of amending the verdict, invade the exclusive province of the jury, or substitute his judgment for theirs" [citations omitted]); *Bronchak v. Rebmann*, 263 Pa.Super. 136, 139, 397 A.2d 438, 439 (1979) ("[i]f the verdict bears a reasonable resemblance to the proven damages, it is not the function of the court to substitute its judgment for that of the jury."). *See generally*, 76 Am.Jur.2d *Trial* § 1208 (1975).

Trial judges may, under Maryland law, change a verdict and remold it if the modification is one of form, *Davis v. Board of Education*, 168 Md. 74, 78–79, 176 A. 878, 880 (1935), and "the intention of the jury is manifest and *beyond doubt*," (emphasis supplied) *Hawks v. Crofton*, 2 Burrows 698, 699 (K.B.1758), quoted in *Diamond State Telephone Co. v. Blake*, 105 Md. 570, 575, 66 A. 631, 633–34 (1907); *Browne v. Browne*, 22 Md. 103, 115 (1864). *See*

*also Montgomery Ward & Co. v. Keulemans*, 275 Md. 441, 340 A.2d 705 (1975); *Traylor v. Grafton*, 273 Md. 649, 332 A.2d 651 (1975); *Sergeant Co. v. Clifton Building Corp.*, 47 Md.App. 307, 423 A.2d 257 (1980).

The jury's verdicts on special issues in the case at bar were not altered as to form but rather as to content. The jury expressly found that Polkes was liable to Thompson's for $2,479.00. The judge changed that figure to $168,-386.94. The jury expressly found that Polkes was liable to General in the sum of $2,479.00 by way of contribution to General's payment of damages to Thompson's; the judge changed that figure to $168,386.94. In effect, the judge wiped out the jury's verdict with respect to Polkes's liability to Thompson's and General. He then substituted for the jury's verdicts what he thought the verdicts should be.

It is obvious to us that the jury intended General to pay Thompson's and that Polkes was to reimburse General to the extent of $2,479.00, and no more. The trial judge had available remedies other than "reforming" the verdict. He could, for example, have granted a new trial. Instead, in the guise of reforming the verdict, he wrote a new one. Patently deciding that the jury must have been confused, the judge did precisely what *Gaither v. Wilmer* says should not be done—he "invaded the exclusive province of the jury, and substituted his verdict for theirs." 71 Md. at 368, 18 A. at 592.

The danger in permitting judges to alter a jury's verdict, other than as to form, is that such a practice would not only erode the concept of a trial by jury, it would eradicate it. Juries would serve little, if any, purpose other than window dressing because of the judge's ability to abrogate whatever the jury did by substituting his own findings. We think the right to a trial by jury does not mean a jury trial with an ultimate verdict by a judge.

Whatever bounds there may be to reforming a verdict as to form, we are convinced that increasing the amount of the

verdict from $2,479.00 to $168,386.94 is more than mere form; it is substance.

We vacate the order reforming the verdicts and remand the matter to the trial court with instructions that it reinstate the jury verdicts.

ORDER REFORMING VERDICTS VACATED. CASE REMANDED FOR ENTRY OF JUDGMENT ON VERDICTS. COSTS TO BE PAID BY APPELLEE, GENERAL INSURANCE COMPANY OF AMERICA, INC.