69 A.3d 1015

**Catherine Lynn TURNER**

v.

**Direse Helen HASTINGS.**

**No. 66, Sept. Term, 2012.**

Court of Appeals of Maryland.

June 25, 2013.

Reconsideration Denied Aug. 18, 2013.

500

Anders Randrup, III (Steven D. Cox of Law Offices of Steven D. Cox, LLC, Salisbury, MD), on brief, for Petitioner.

Roscoe R. Leslie and Ernest I. Cornbrooks, III (Webb, Burnett, Cornbrooks, Wilber, Vorhis, Douse & Mason, LLP, Salisbury, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

ADKINS, J.

This case calls for us to explore the interplay between accepting a jury verdict and revising that verdict after the jury is dismissed, as well as, what to do when a verdict appears on its face to have internal inconsistencies. We hold that, for a jury verdict to be properly returned in open court, it must be orally announced, hearkened to by the jury, and subject to an opportunity to poll. Once these requirements are met, the verdict is then taken from the jury and, upon the entering of a judgment, becomes subject to a judge's revisory powers. Though in some instances revisory powers can be quite broad, they are much more limited when it comes to changing a jury verdict. Because a judge is forbidden from encroaching on the jury's fact-finding province, his discretion to revise a jury verdict pursuant to Maryland Rule 2–535 is permissible only to effectuate the true intent of the jury.

## FACTS AND PROCEDURAL HISTORY

On July 4, 2008, Catherine Turner was employed as a professional taxi cab driver in Ocean City, Maryland. On that night she was making a left-hand turn at a stop light where she had a green arrow allowing her to proceed. At that same time, Direse Hastings was operating a motor vehicle coming from the opposite direction. Hastings ran a red light, striking the taxi cab operated by Turner.

Turner filed suit in Worcester County, and the case went to trial on September 27, 2010, based on theories of negligence and assault. Before beginning deliberations, the jury was given two verdict sheets—one for the negligence count and one for the assault count. The verdict sheet submitted for the negligence count contained four questions and is reproduced below:

1. Has it been proven by a preponderance of the evidence that the Defendant, Direse Helen Hastings, was negligent?

___ YES ___ NO

**IF YOU HAVE ANSWERED "NO" TO QUESTION NO. 1, PLEASE TERMINATE YOUR DELIBERATIONS AND NOTIFY THE BAILIFF. IF YOU HAVE ANSWERED "YES" TO QUESTION NO. 1, PLEASE RESPOND TO QUESTION NO. 2.**

2. Has it been proven by a preponderance of the evidence that Plaintiff, Catherine Lynn Turner, was negligent in the operation of her motor vehicle and that such negligence on her part proximately caused or contributed to the motor vehicle accident referred to in the evidence?

___ YES ___ NO

**IF YOU HAVE ANSWERED "YES" TO QUESTION NO. 2, PLEASE TERMINATE YOUR DELIBERATIONS AND NOTIFY THE BAILIFF. IF YOU HAVE ANSWERED "YES" TO QUESTION NO. 1 AND IF YOU HAVE ANSWERED "NO" TO QUESTION NO. 2, PLEASE ANSWER QUESTION NO. 3.**

3. Has it been proven by a preponderance of the evidence that Catherine Lynn Turner sustained injuries as a result of the motor vehicle accident referred to in the evidence?

___ YES ___ NO

**IF YOU HAVE ANSWERED "NO" TO QUESTION NO. 3, PLEASE TERMINATE YOUR DELIBERATIONS AND NOTIFY THE BAILIFF. IF YOU HAVE ANSWERED "YES" TO QUESTION NO. 3, PLEASE ANSWER QUESTION NO. 4.**

4. What damages has the Plaintiff proven by a preponderance of the evidence?

 a. Medical expenses incurred in the past: $ _____

 b. Loss of income reasonably probable to
 have been incurred in the past: $ _____

 c. Non-economic damages including pain
 and suffering: $ _____

 d. Property damage to the taxi cab: $ _____

Upon reaching a verdict, the jury came back into the courtroom, the court clerk read the questions of the verdict sheet aloud from a blank copy, and the jury foreman answered using the completed copy. Apparently, before doing this, no one examined the full verdict sheet as completed by the jury. When the clerk asked the jury about Question 1, the foreman answered "Yes": Hastings was negligent. In response to Question 2, the foreman answered "No": Turner was not negligent. In response to Question 3, the foreman answered "No": Turner had not sustained injuries. Following the instructions on the verdict sheet, the clerk then stopped at Question 3 and did not ask Question 4. Moving to the second verdict sheet, she then asked whether Hastings had committed an assault, to which the foreman answered "No." The clerk then hearkened the jury to its verdict, rereading the first three questions on the negligence verdict sheet, the single question on the assault verdict sheet, and the jury foreman's answers to them, to which all jurors answered in the affirmative. The Court then dismissed the jury.

It was not until after the jury was dismissed that the judge received the jury's completed copy of the verdict sheet. Upon reviewing the verdict sheet, the judge discovered that the jury had gone on to answer Question 4 of the negligence count, which was filled in as follows:

| | |
|---|---|
| a. Medical expenses incurred in the past: | $325.00 |
| b. Loss of income reasonably probable to have been incurred in the past: | $18,000 |
| c. Non-economic damages including pain and suffering: | $0 |
| d. Property damage to the taxi cab: | $2,820 |

The judge then brought the parties back on the record to hear arguments about how to proceed. He ultimately found that "[t]here is no question" that the jury intended to award damages and, therefore, enrolled the verdict sheet as the jury's verdict, awarding the damages as shown on the verdict sheet to Turner. The Court of Special Appeals, in a reported opinion, vacated the award. *See Hastings v. Turner,* 205 Md.App. 413, 45 A.3d 835 (2012).

On September 21, 2012, this Court granted a writ of certiorari, *Turner v. Hastings,* 428 Md. 543, 52 A.3d 978 (2012), to answer the following questions:

1. Did the Court of Special Appeals improperly deny your Petitioner damages, that is a monetary award, only because the portion of the jury's verdict that awarded damages had not been announced in open court?

2. Did the Circuit Court have the power to correct what it saw as an inconsistent verdict?

We hold that the trial judge properly exercised his discretion to revise the verdict, in effectuating the intent of the jury, by including the award of damages as shown on the verdict sheet.

## DISCUSSION

The issues presented call for us to delve into the delicate area of jury verdicts. This topic can quickly cause uneasiness

for judges, lawyers, and litigants. The jury's verdict is the essence of the American legal system—a role which judges should not usurp except in the most limited circumstances. In this case we explore the nature and extent of the judge's discretion to revise a jury verdict, a foray that requires considering whether a jury's verdict that has internal inconsistencies can stand. We address these issues below.

### Revising a Jury Verdict to Include Damages on the Verdict Sheet

The issue of whether the jury's verdict may be revised by the trial judge to include an award of damages contained on the verdict sheet—but not read aloud in open court—implicates two Maryland Rules: 2–522 (Court Decision—Jury Verdict) and 2–535 (Revisory Power). The parties largely disagree as to which of these rules should govern our analysis of the issue. Turner argues that, under Rule 2–535, a trial court has broad revisory powers, and therefore, the trial judge had authority to revise the judgment to add the damage award reflected on the verdict sheet. Hastings argues that, under Rule 2–522, all jury verdicts must be returned in open court, and therefore, the unreturned damage award cannot be added to the verdict.

What the parties fail to discuss, however, is how the two rules relate to each other. Rule 2–522 sets forth the requirements of how the court should properly receive a jury verdict, i.e. how a verdict becomes properly "returned." In contrast, Rule 2–535 sets forth a judge's revisory powers, which kick in only after a judgment has been entered. Starting in chronological order, our analysis begins with Maryland Rule 2–522 and the determination of whether a verdict exists in this case.

### *Returning Jury Verdicts in Open Court in Civil Trials*

Rule 2–522 lays out the requirements of all jury verdicts in civil cases and requires that, "The verdict shall be returned in open court. On request of a party or on the court's own initiative, the jury shall be polled before it is discharged." Md. Rule 2–522(b).

To support her argument that the damage award was not "returned in open court," Hastings relies on *Jones v. State,* 384 Md. 669, 866 A.2d 151 (2005)—a case, in which we discussed the "returned in open court" requirement in the criminal context. Verdicts in criminal cases are governed by Maryland Rule 4–327, which requires that "[t]he verdict of a jury shall be unanimous and shall be returned in open court." Md. Rule 4–327(a). The Rule also provides for the polling of the jury. Md. Rule 4–327(e).

Examining what it means for a verdict to be "returned," in *Jones,* we stated that historically there have been three requirements: (1) the foreman would orally answer the clerk's questions and state the verdict; (2) if requested, the jury would be polled "to ensure the unanimity of the verdict;" and (3) finally, the jury would be hearkened to the verdict as a "traditional formality announcing the recording of the verdict." *Id.* at 682–84, 866 A.2d at 159–60 (quotation marks and citation omitted). We then explained that "Maryland Rule 4–327(a) and (e) embody the essence of this historical procedure for 'returning' a verdict." *Id.* at 681, 866 A.2d at 158 (footnotes omitted).

In *Jones,* however, this procedure for returning a verdict was not followed. The jury was given a verdict sheet containing four charges against the defendant, on which the jury found the defendant guilty of all four. *Id.* at 675–77, 866 A.2d at 154–55. When the court clerk read the verdict in court, however, she only asked how the jury found on the first three charges, and the jury forelady only announced the guilty verdicts on the first three charges. *Id.* at 676, 866 A.2d at 155. The jury was then hearkened to the three verdicts and dismissed. *Id.* at 676–77, 866 A.2d at 155. Nevertheless, at sentencing, the judge imposed a sentence on all four counts— including the fourth count that was not orally announced or hearkened to by the jury. *Id.* at 677, 866 A.2d at 156. We held that "because the jury was not polled and hearkened to that [fourth] Count in absence of its oral announcement, the verdict of guilt cannot stand and any sentence apportioned

thereto must be vacated."[1] *Id.* at 686, 866 A.2d at 161. Relying on *Jones*, Hastings argues that the award of damages in this case was not properly "returned" and must be vacated.

In response to Hastings's argument, Turner does not provide an explanation of what it means, in her opinion, to return a verdict in open court. Rather, she only argues the negative—that Rule 2–522 cannot possibly require all civil jury verdicts to be announced in open court and hearkened to, and that the parties be given a chance to poll the jury. In Turner's view, if these three requirements were imposed on civil jury verdicts, then judges would be stripped of all of their revisory powers—as well as the ability to grant common law remittitur and judgment notwithstanding the verdict—because any revision, modification, amendment, or alteration of the verdict after the jury has been dismissed cannot be announced in open court, hearkened to, or polled. Thus, Turner distinguishes *Jones* and other criminal cases under the general argument that the nature of civil verdicts "is manifestly different from criminal verdicts."

We do not agree with Turner's predicted scenario of horrors, as they are not supported by a proper understanding of the rules. Rule 2–522 sets forth the requirements of how to properly accept a jury verdict, but it does not apply to entering or revising a judgment. In other words, the requirements of Rule 2–522 have no applicability outside of accepting a jury verdict, and would have no effect on how that verdict, once properly accepted, becomes a judgment or what can be done to that verdict after it becomes a judgment. A judge's revisory powers, common law remittitur, and judgment notwithstanding the verdict all deal with what may happen to a verdict after it is properly returned, and therefore, are not affected by the requirements of Rule 2–522. These powers can only exist after Rule 2–522 has been satisfied.

---

**1.** We explained that " 'Returning' the verdict in open court mandates an oral announcement of the verdict upon the conclusion of the jury's deliberations to enable the defendant to exercise the right to poll the jury as to the verdicts." *Jones v. State,* 384 Md. 669, 684, 866 A.2d 151, 160 (2005).

In this regard, we also cannot agree with Turner's attempt to distinguish away our jurisprudence defining what it means for a verdict to be "returned in open court" in the criminal context. Certainly criminal and civil cases are different, but the differences that Turner highlights, such as, for example, the interests at stake and the burden of proof, are not material to the point at hand.[2] None of the distinctions provide a reason, specific to returning a jury verdict, for why we should apply a different rule in the criminal and civil contexts for how a jury verdict is "returned in open court."

Indeed, Turner's attempted distinctions fall flat once the specific civil and criminal rules are actually compared to one another. The rule governing jury verdicts in the civil context is Maryland Rule 2–522, which states: "The verdict shall be returned in open court." Md. Rule 2–522(b). The rule governing jury verdicts in the criminal context is Maryland Rule 4–327, which provides that "[t]he verdict of a jury shall be unanimous and shall be returned in open court." Md. Rule 4–327(a). The two rules are identical in the requirement that both verdicts "shall be returned in open court."

Furthermore, tracing the development and history of the rules, it is clear that this similarity is not a coincidence. Both Rule 2–522(b) and Rule 4–327(a) are derived from the same rule—former rule 759(a). That rule also provided that "[t]he verdict of a jury shall be unanimous and shall be returned in open court." Importantly, former rule 759(a) was a rule of criminal procedure. As we explained in *Jones:* Rule 4–327 "is identical to former Maryland Rule 759, which was derived from Rule 40 of the Uniform Rules of Criminal Procedure promulgated by the National Conference of Commissioners on

---

**2.** Specifically, explaining how criminal and civil cases are different, Turner argued: (1) in criminal cases a person's liberty interest is at stake, whereas, in a civil case it is only money; (2) the burden of proof in a criminal case is beyond a reasonable doubt, whereas, in a civil case it is by a preponderance of the evidence; (3) unlike a plaintiff in a civil case, the state does not have a motion for a directed verdict in a criminal case; and (4) there are vast procedural differences between civil and criminal contempt.

Uniform State Laws." 384 Md. at 681–82, 866 A.2d at 158 (footnotes omitted). In other words, the current civil rule, requiring jury verdicts to be "returned in open court," was derived directly from a rule of criminal procedure—a rule which we interpreted in *Jones* as requiring an oral announcement of the verdict, a hearkening to, and an opportunity to poll the jury.

### *Returning of the Jury Verdict in this Case*

Based on the clear development of the rules, for a jury verdict in a civil case to be "returned in open court," there must be an oral announcement of the verdict, hearkened to by the jury, with an opportunity to poll. The question still remains, though, whether that occurred in this case.

Hastings would say no—analogizing the jury's failure to read the award of damages in this case to the jury's failure to read its guilty verdict in *Jones*. But this analogy misses one crucial difference. In *Jones*, each question on the verdict sheet dealt with its own independent criminal charge—(1) attempted robbery with a dangerous and deadly weapon; (2) attempted robbery; (3) possession of a firearm by a person convicted of a crime of violence; and (4) use of a handgun in the commission of a crime of violence. 384 Md. at 675, 866 A.2d at 155. Thus, when the jury failed to read its guilty verdict for the fourth count, there was no verdict, whatsoever, for the charge of use of a handgun in the commission of a crime of violence. *Id.* at 676, 866 A.2d at 155. With no verdict at all, the judge could not sentence the defendant on that charge. *Id.* at 686, 866 A.2d at 161.

The facts of *Jones* would be analogous to this case if the jury had read its verdict on the negligence count but failed to read its verdict on the assault count. In such a situation, similar to *Jones*, Turner would not be able to recover damages on the assault count regardless of what was written on the verdict sheet. But that is not what happened here.

Instead, in this case, the question that the jury failed to read and hearken to was not a count, but rather, the amount

of damages to be awarded on the negligence count. In this case, then, the jury did announce in open court and hearken to its verdict that the defendant was negligent, that the plaintiff was not contributorily negligent, and that the plaintiff suffered no injury. This is a sufficient verdict that a jury is rightfully permitted to return and that fully satisfies all the requirements of Rule 2–522, that the verdict be "returned in open court."

### *Judge's Power to Revise a Jury Verdict Once Returned*

The verdict, once properly returned in satisfaction of Rule 2–522, is taken from the jury. *Smith v. State,* 299 Md. 158, 168, 472 A.2d 988, 993 (1984) ("[I]t is the acceptance of the verdict upon the poll that removes the verdict from the province of the jury."); *Caldwell v. State,* 164 Md.App. 612, 631, 884 A.2d 199, 209 (2005) ("A case is removed from the province of the jury when the jury is hearkened to its verdict and the verdict is accepted by the court; or when the jury is polled, and the verdict as polled is accepted by the court."). A judgment is then entered and becomes subject to a court's revisory powers under Rule 2–535(a). *See* Md. Rule 2–535(a) ("On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment. . . .").

Quoting from our opinion in *Southern Management Corp. v. Taha,* Turner argues that "[t]he scope of a court's power under Rule 2–535(a) is broad." 378 Md. 461, 494, 836 A.2d 627, 646 (2003). She maintains that "[i]n its discretion, a court may modify a judgment if a party files a motion seeking to revise or set aside that judgment within 30 days after its entry." *Id.; see also Mona v. Mona Elec. Grp., Inc.,* 176 Md.App. 672, 712, 934 A.2d 450, 473 (2007) ("Accordingly, the court acted within its broad revisory authority when it revised its judgment by reducing [the] damages award. . . ."). Relying on several Court of Special Appeals' cases, Turner argues that this broad discretion is designed to allow the judge to effectuate the intent of the jury. *See Kleban v. Eghrari-Sabet,* 174 Md.App. 60, 96, 920 A.2d 606, 627 (2007) ("A court

may not invade the province of the jury by changing a jury verdict unless the court is remodeling the verdict to reflect the jury's intention."); *Bd. of Trs. of Balt. Cnty. Cmty. Colls. v. RTKL Assocs., Inc.*, 80 Md.App. 45, 52, 559 A.2d 805, 809 (1989) (same); *Polkes & Goldberg Ins., Inc. v. Gen. Ins. Co. of Am.*, 60 Md.App. 162, 167, 481 A.2d 808, 810 (1984) (same).

■ In this regard, when a judge revises a verdict in an attempt to comport with the jury's intention, the judge has properly exercised his discretion. But when a judge revises a verdict by substituting his own view of the evidence for that of the jury's, he has abused his discretion. In this case, then, argues Turner, it was the former: the judge properly exercised his discretion because "[t]here was no question" that the jury intended to award damages, and therefore, the "the trial judge was clearly indicating that it was trying to do what the jury intended" and was "not trying to take the verdict from the jury."

Hastings responds by drawing a distinction between a court's revisory power when the case involves a non-jury verdict as opposed to a jury verdict. In her view, Turner's discussion of a court's broad discretion in revising a judgment applies only in cases involving a non-jury judgment. Whereas, a court's revisory power is much more "narrow and circumscribed with a jury verdict." Relying on the reasoning of the Court of Special Appeals' opinion and cases cited therein, Hastings argues that the "trial court may substantively amend a jury verdict to effectuate its 'real meaning' only when 'the intention of the jury is manifest and beyond doubt.' " Under this standard, Hastings argues, the award of damages was not "manifest and beyond doubt" because the award was not announced in open court, and there are a "myriad of explanations" which could explain the notes on the verdict sheet, including "notes during deliberations, as an attempt to document Turner's requests of the jury, or as part of a process before the jury reached unanimity."

■ As the parties' selected quotations demonstrate, our cases contain diverse language, stating, on the one hand, that

a judge has broad discretion under Rule 2–535 to revise judgments, and, on the other hand, that a judge's power to revise a jury verdict is limited and allowed only when the intent of the jury is manifest and beyond doubt. *Compare Taha*, 378 Md. at 495, 836 A.2d at 647 ("We believe that the term 'broad discretion' best describes the nature and scope of a court's power to revise a judgment under Rule 2–535. . . ."), *with Polkes & Goldberg Ins.*, 60 Md.App. at 169, 481 A.2d at 811–12 ("Trial judges may, under Maryland law, change a verdict and remold it if the modification is one of form, and the intention of the jury is manifest and beyond doubt." (emphasis removed) (citation and quotation marks omitted)). These seemingly inconsistent statements are not conflicting, however, when the differences between a non-jury and a jury verdict are considered. A judge has substantially broader discretion when revising a non-jury verdict or when revising a jury verdict based purely on a legal issue, but much more limited discretion when revising a jury verdict.[3]

This distinction makes sense. There is a risk that, in revising a jury verdict, judges may substitute their own findings in place of the jury's, in effect, wiping out the right to a jury trial. *See Polkes & Goldberg Ins.*, 60 Md.App. at 170, 481 A.2d at 812. These concerns are absent when a judge

---

**3.** Although not stated quite so plainly, the Maryland Rules recognize that there is a difference between revising a non-jury verdict and a jury verdict. Rule 2–534, for example, contemplates a motion to alter or amend a judgment based on a non-jury verdict and grants the revising judge substantially broader powers. It provides:

> In an action decided by the court, on motion of any party filed within ten days after entry of judgment, the court may open the judgment to receive additional evidence, may amend its findings or its statement of reasons for the decision, may set forth additional findings or reasons, may enter new findings or new reasons, may amend the judgment, or may enter a new judgment.

Md. Rule 2–534. Rule 2–535 then gives a judge revisory powers of both non-jury and jury verdicts, but recognizes the difference between the two and incorporates the broader powers of Rule 2–534 for revising a non-jury verdict. *See* Md. Rule 2–535(a) ("[T]he court may exercise revisory power and control over the judgment and, if the action was tried before the court, may take any action that it could have taken under Rule 2–534.").

revises a non-jury verdict or a jury verdict based purely on a matter of law. In a bench trial, for example, the judge is the finder of fact, so when the judge subsequently revises his own verdict there is no concern that he is interfering with the right to a jury trial. The same is true when a judge revises a verdict based purely on a legal issue because legal issues are not within the province of the jury.

■ Here, the trial court had limited discretion in revising the jury verdict. In order to justify the judge's increase in the jury's award of damages in this case, the intent of the jury must be manifest and beyond doubt. *See ACandS, Inc. v. Godwin,* 340 Md. 334, 405, 667 A.2d 116, 151 (1995); *Montgomery Ward & Co., Inc. v. Keulemans,* 275 Md. 441, 446, 340 A.2d 705, 708 (1975); *Davis v. Bd. of Educ. of Anne Arundel Cnty.,* 168 Md. 74, 78–79, 176 A. 878, 880 (1935); *Diamond State Tel. Co. v. Blake,* 105 Md. 570, 575–76, 66 A. 631, 633–34 (1907). The judge, present in the courtroom with "his finger on the pulse of the trial," was in the best position to review the numbers written on the verdict sheet and appreciate the jury's intent. *See, e.g., State v. Cook,* 338 Md. 598, 615, 659 A.2d 1313, 1322 (1995) ("As we noted in the context of the judge's discretion in declaring a mistrial, '[t]he judge is physically on the scene, able to observe matters not usually reflected in a cold record.'" (quoting *State v. Hawkins,* 326 Md. 270, 278, 604 A.2d 489, 493 (1992))). As an appellate court, then, we do not substitute our own finding for that of the trial judge's, *see Oesby v. State,* 142 Md.App. 144, 167, 788 A.2d 662, 675 (2002), but rather, review the judge's finding of "manifest and beyond doubt" for abuse of discretion.

■ In deciding whether to revise the jury's verdict in this case, the judge engaged in the following colloquy with counsel:

THE COURT: Well, what I was concerned with was [the jury] might say no, but then award property damages, to the point where I thought about making that a separate question, but they put in three out of four.

MR. COX [Plaintiff]: And they didn't put in the, we asked for it for property.

THE COURT: Pardon me? They awarded property damage.

MR. COX: Yes, but it wasn't what we asked for. Did you say 2,800 and—

THE COURT: Yes, $2,820, that's probably what you asked for, minus the brakes.

MR. COX: So they gave us something, so they must have done some figuring. The only thing, it's—the only thing I can tell you, it sounds to me like they did award us damages.

THE COURT: There is no question.

MR. CORNBROOKS [Defendant]: Well, I think the fairest interpretation is, that they misread the instructions. Their verdict is that there was no injuries.

THE COURT: Or they misunderstood what that was supposed to mean, I don't know. I mean, the instructions are pretty clear, but they've gone on—

\* \* \*

MR. COX: Well, the only thing that I can, perhaps they felt that Catherine Turner didn't sustain injuries, but she should get her past medicals and she should get her, you say there was no—

THE COURT: Lost income was 18.

MR. COX: Then there was ... no non-economic damages, maybe that's what they're referring to, and then there is the property damage.

MR. CORNBROOKS: I think the alternative is, if they follow, you know, logically, has she been injured, question number three, they say no, then I believe that the proper disposition, and I'd make an appropriate motion to that effect, is that the medical expenses be stricken, the loss if income be stricken, that the property damage be awarded, because that's not an injury, that's sort of a separate kettle of fish.

\* \* \*

THE COURT: Well, that's the next question, what do we do when it's somewhat inconsistent? So I guess the best thing to do is enroll this as their verdict form and you all can file written motions. If you want, if you don't have the figures I'll tell them to you again so you can write them down.

The medical expenses were 325. The loss of income was 18,000. Non-economic damages were zero. And property damage to the taxi was $2,820.

It is plain from the record that, in reviewing the verdict sheet, the trial judge realized that the numbers were not simply a recitation of what the plaintiff had asked for; and therefore, the judge did not accept defense counsel's interpretation that the numbers were just a way of keeping track of the plaintiff's request. Instead, it was apparent to the trial judge that the numbers revealed a deliberate thought process by the jury in awarding a specific amount of damages that the jury believed to be proper based on the evidence of the case. The jury awarded $0 in non-economic damages. Yet, they did award Turner $325 for her past medical expenses, $18,000 for her loss of income, and $2,820 for the property damage to her taxi. Regarding the property damage, for example, the judge specifically found that the award of $2,820 was "what [the plaintiff] had asked for, minus the brakes." The trial judge, then, was clearly convinced that the jury had made specific calculations—examining the evidence presented before it and deliberating what amount of damages would be proper.

Based on this specific allocation of damages, the trial judge found that the jury's intent to award damages, as listed on the verdict sheet, was beyond doubt. He explicitly found that "[t]here is no question" that the jury intended to award damages. In so finding, it is obvious that the judge acted to effectuate the intent of the jury and did not seek to "encroach[ ] on the fact finding province of the jury." *See Kleban,* 174 Md.App. at 93, 920 A.2d at 626. Although a judge's discretion to revise a jury verdict is quite limited, under these particular circumstances, we conclude that the "manifest and beyond doubt" standard was satisfied, and the

judge did not abuse his discretion in revising the verdict, pursuant to Rule 2–535, to include in the judgment the jury's award of damages as written on the verdict sheet.

### Inconsistent Jury Verdicts

 This holding brings us squarely to our second question: whether the revised verdict—which now contains a finding that the plaintiff suffered no injury but also awarding the plaintiff damages—is irreconcilably inconsistent.

Relying on *Southern Management Corp. v. Taha,* 378 Md. 461, 836 A.2d 627 (2003), Hastings argues that, with the court's adjustment, the verdict is now irreconcilably inconsistent. Taha sued Southern Management Corporation and two of its employees for malicious prosecution. The jury concluded that the two named employees were not liable, but simultaneously found that the corporation was liable based on a theory of respondeat superior. *Id.* at 467, 836 A.2d at 630. We explained that "[w]here the answer to one of the questions in a special verdict form would require a verdict in favor of the plaintiff and an answer to another would require a verdict in favor of the defendant, the verdict is irreconcilably defective." *Id.* at 488, 836 A.2d at 642. We held "that a principal corporation cannot be held liable under the doctrine of respondeat superior when the jury has exonerated the co-defendant employees whose conduct was alleged to be the sole basis of the claim for liability." *Id.* at 486, 836 A.2d at 641.

Relying on *Taha,* Hastings argues that the verdict in this case is irreconcilably inconsistent because it contains an answer to one question that requires a verdict for Hastings, and contains an answer to another question that requires a verdict for Turner. Specifically, in its answer to Question 3, the jury found that Turner had not suffered any injury, which requires a verdict for Hastings and was supposed to end the deliberations. But, in its answer to Question 4, the jury awarded damages to Turner, which requires a verdict for Turner. Therefore, argues Hastings, the verdict is irreconcilably inconsistent and cannot be allowed to stand.

Turner counters by arguing that there is a difference between a verdict that is irreconcilably inconsistent and a verdict that is simply inconsistent. To support this distinction, she relies on the language in an earlier case, in which we explained that "[i]n reconciling a jury's answers to specific interrogatories, we should assume that the jury was rational and consistent, rather than irrational or inconsistent. Our quest should be for a view of the case which would make the jury's findings consistent" *Edwards v. Gramling Eng'g Corp.*, 322 Md. 535, 547–48, 588 A.2d 793, 799 (1991). Therefore, argues Turner, if there is a way for us to reconcile two seemingly inconsistent answers, then the verdict is permissible.

■ On this point, we agree with Turner. Under our holding in *Taha*, it is only irreconcilably inconsistent verdicts that are not permitted to stand. In this regard, we have specifically instructed that we will attempt to reconcile a jury's answers because "[o]ur quest should be for a view of the case which would make the jury's findings consistent." *Edwards*, 322 Md. at 548, 588 A.2d at 799. In *Taha*, however, it was impossible for us to reconcile the jury's verdicts. The sole theory for holding the corporation liable was vicarious liability for the acts of its employees. But the jury also found that the employees were not liable for their acts, thereby obliterating any basis for the first finding. In this way, the verdict was irreconcilably inconsistent.

Here, the jury found that Turner did not suffer any injury, yet awarded her damages. These answers can be reconciled by viewing the jury's answer to Question 3 as finding that Turner did not sustain any personal physical injury. Such an interpretation is consistent with how the jury subsequently awarded damages. Finding that Turner had not suffered any physical injury to her person, the jury awarded $0 for non-economic damages, such as pain and suffering. Yet, it did award Turner a small amount ($325) for her past medical expenses—apparently finding that it was reasonable for Turner to be examined by a doctor following the accident. The jury then awarded Turner her lost income because, although

not physically injured, she would be unable to operate her taxi when it was getting repaired. And, the jury awarded Turner $2,820 in property damage to pay for the necessary repairs to her taxi. This specific allocation of damages is consistent with the view that the jury found that Turner had not sustained any physical injuries, yet she was still damaged through her loss of income and personal property damage. Therefore, the juries answers to Questions 3 and 4 are not irreconcilably inconsistent, and the verdict, awarding damages to Turner, can stand.

## CONCLUSION

We hold that the requirement that a jury verdict in a civil case be returned in open court requires the verdict to be orally announced, hearkened to, and the parties given an opportunity to have the jury polled. Once these requirements are met, the verdict is taken from the jury, and upon entering a judgment, becomes subject to a judge's revisory powers. These powers are limited in revising a jury verdict, making a revision permissible only when the intent of the jury is manifest and beyond doubt. Here, the trial court properly applied this standard and did not abuse its discretion in making the revision. Moreover, the verdict, as revised, was not irreconcilably inconsistent, and thus, could stand under the rule in *Taha.*

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT, EXCEPT THAT THE COST OF THE SUBSTITUTED RECORD EXTRACT IN THIS COURT BE BORNE SOLELY BY PETITIONER.**